**John E. GARRETT, Appellant,**

v.

**John Wesley JEFFCOAT and the United States of America, Appellee.**

No. 72–2363.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1973.

Decided Aug. 9, 1973.

W. G. Lynn, Jr., Aiken, S. C., (W. G. Lynn, and Henderson, Salley, Bodenheimer & Lynn, Aiken, S. C., on brief) for appellant.

Daniel Fulton, Asst. U. S. Atty., (John K. Grisso, U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and FIELD, Circuit Judges.

FIELD, Circuit Judge:

On June 15, 1971, John E. Garrett was a passenger in an automobile owned and operated by Hastings A. Thomas, an employee of the United States Department of Agriculture, when it was involved in a collision with a vehicle driven by John Wesley Jeffcoat resulting in serious injuries to Garrett. It is conceded that at the time Thomas was acting within the scope of his employment.

Garrett filed an administrative claim with the Department of Agriculture pursuant to the provisions of the Feder-

al Tort Claims Act[1] and subsequent thereto accepted an offer of settlement from Thomas' liability insurer in an amount equal to the full policy limits and executed a release to both Thomas and his insurance carrier. The release reserved Garrett's rights against the Government in the following language:

It is further expressly understood and agreed that this Release is solely for the benefit of Hastings A. Thomas and The Hartford Insurance Company and is not intended to inure to the benefit of The United States of America or any of its agencies, organizations, departments or institutions or any other person, organization or institution whatsoever.

It is further stipulated and agreed that the said sum is only a portion of the damages sustained; that the said John E. Garrett specifically reserves the right to make claim against the United States of America for said damages and realizes that the amount paid will be credited against any judgment obtained by him against the said United States of America for said damages.

Thereafter, on May 18, 1972, Garrett filed his complaint against Jeffcoat and the United States alleging a cause of action under the Tort Claims Act. In its answer the Government alleged that it was relieved of liability by reason of the release of Thomas and his insurer and later filed its motion to dismiss the complaint as to it upon the same grounds. The court granted the motion to dismiss, 350 F.Supp. 197, and this appeal followed.

While he recognized that by its terms the release was not intended to reflect a full settlement of Garrett's claim nor release the United States from liability, the district judge proceeded upon the assumption that the effect of the release was to be determined by the law of South Carolina and concluded that the release of the employee also released the Government from its liability to Garrett. In reaching this conclusion the court below placed primary reliance upon Seaboard Air Line Railroad Co. v. Coastal Distributing Co., 273 F.Supp. 340, 343 (D.C.S.C.1967), which held that since the employer's liability was merely derivative and secondary to that of the employee, the release of the employee operated as an acquittal of the master "not merely upon the theory that the employer * * * is hereby denied the right to recover over against the employee, 'but upon the ground that the sole basis of liability is the negligence or wrongdoing of the employee imputed to the employer under the doctrine respondeat superior * * * '."

If South Carolina law is conclusive on the issue, then unquestionably Seaboard supports the dismissal of Garrett's complaint. However, while it is true that under 28 U.S.C. § 1346(b) state law generally governs actions under the Tort Claims Act, unique features of the federal legislation require that the state law be read in the light of the special provisions and interpretations of the Act. This was recognized in Munson v. United States, 380 F.2d 976 (6 Cir. 1967), a case factually quite similar to the one at hand which dealt with the law of Ohio to the effect that the release of the servant exonerated the master from liability. The Sixth Circuit concluded that the sole reason for the Ohio rule was the protection of the master's right to indemnity, and since the government was not entitled to indemnity from its employee under United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954), the state law would not be applied to extend the benefit of the release to the United States. Applying the law of Oklahoma, however, a contrary result was reached by the Tenth Circuit in Land v. United States, 231 F.Supp. 883 (N.D.Okla.1964), aff'd, 342 F.2d 785 (10 Cir. 1965) and Scoggin v. United States, 444 F.2d 74 (10 Cir.

1. 28 U.S.C. § 1346(b) and § 2671 et seq.

1971). In his order of dismissal the district judge adverted to these cases and rejected the *Munson* rationale for the reason, among others, that the South Carolina rule rests primarily upon the doctrine of *respondeat superior* rather than the employer's right of indemnity.

We feel, however, that these cases considered by the district judge are of little significance since the enactment of the Federal Drivers Act, 28 U.S.C. § 2679(b)–(e).[2] Under Section 2679(b) the remedy against the United States for personal injury resulting from the operation of a motor vehicle by any employee of the Government is "exclusive of any other civil action or proceeding by reason of the same subject matter against the employee * * * whose act or omission gave rise to the claim." The provisions of this section "were designed to insulate an employee of the United States from liability for injuries caused by negligent acts in the operation of a motor vehicle while acting within the course of employment," Henderson v. United States, 429 F.2d 588, 590 (10 Cir. 1970), and "to relieve Government employees of the burden of personal liability for accidents which occurred on the job." Carr v. United States, 422 F.2d 1007, 1009 (4 Cir. 1970). We conclude that the cumulative effect of the Federal Drivers Act and *Gilman, supra*, is to make the United States *solely* liable for the negligent acts of its servants while operating motor vehicles within the scope of their employment and that there is no cause of action whatever against the employee himself. Under these circumstances, the liability of the Government is no longer derivative or secondary in nature, but is primary and exclusive. Thus, the release of the servant from "liability" for a negligent act has no effect whatever on the liability of the United States.

The Government argues that since Garrett released not only Thomas but also his insurance carrier, the United States has been prejudiced to a degree which has an operative bearing on the issue before us. If the Government qualifies as an insured under the terms of Thomas' policy it, of course, is entitled to its full rights thereunder, including indemnity and defense. Grant v. United States, 271 F.2d 651 (2 Cir. 1959). However, we perceive no prejudice to those rights in the record before us. The carrier has paid the full limits of its contract of indemnity and the Government will get the benefit of a credit of this amount against any judgment or settlement of Garrett's claim. This right of the Government was specifically recognized by all of the parties to the release. There is nothing in the record to indicate that the insurance carrier has declined to defend the Government, and we find nothing in the settlement agreement which would deny the exercise of this policy right by the United States should it be so disposed.

For these reasons, we conclude that the law of South Carolina on the effect to be accorded the release must yield to the clear import of the Federal legislation, and the order of the district court dismissing Garrett's complaint against the United States is reversed and the case remanded for further proceedings consistent herewith.

Reversed.

2. In Scoggin v. United States, 444 F.2d 74 (10 Cir. 1971), which involved a claim subsequent to the Federal Drivers Act, the court adhered to the rationale of *Land*. However, we do not find the reasoning of the *per curiam* opinion either clear or persuasive.