MELISSA L. BAILEY, administratrix,[1] *vs.* TOWN OF BOURNE.

No. 93-P-1801.

Barnstable. June 17, 1994. - January 26, 1995.

Present: DREBEN, FINE, & JACOBS, JJ.[*]

*Municipal Corporations*, Liability for tort. *Negligence*, Municipal em-
ployee. *Massachusetts Tort Claims Act. Joint Tortfeasors. Agency*,
Agent's liability to third person. *Release. Indemnity.*

The common law rule that a general release of an agent discharges the
principal from liability was not superseded or altered by enactment of
G. L. c. 258, the Massachusetts Tort Claims Act, thus a general re-
lease discharging a tortfeasor from liability (in exchange for payment
under a policy of insurance) precluded an action brought under the
statute against the tortfeasor's municipal employer. [72-76]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 3, 1992.

The case was heard by *Gerald F. O'Neill, Jr.*, J., on a mo-
tion for summary judgment.

*Lee M. Berger* for the plaintiff.

*Joan M. LeGraw* (*Robert S. Troy*, Town Counsel, with
her) for the defendant.

JACOBS, J. Soon after her mother sustained fatal injuries
while a passenger in a vehicle owned and operated by Elmire
M. Curtis (Curtis), the plaintiff, as sole heir and administra-
trix of her mother's estate, signed a general release discharg-
ing Curtis from liability for her mother's death in exchange
for $100,000 paid by Curtis's automobile insurer.[2] There-
after, the plaintiff brought this action for conscious suffering

---

[1] Of the estate of Sandra S. Henry.

[*] Justice Fine participated in the deliberation on this case prior to her
retirement.

[2] Our record is silent as to why Curtis's insurer settled with the plaintiff.
In her brief, the plaintiff opines that the insurer paid $100,000, the maxi-

and wrongful death against the town of Bourne pursuant to G. L. c. 258, the Massachusetts Tort Claims Act (the Act).[3] In her complaint, she alleges that, at the time of the fatal accident, Curtis, in her capacity as a "volunteer" for the town's council on aging, was driving the plaintiff's mother to a dentist appointment and, therefore, was a "public employee" as that term is defined in the statute. See G. L. c. 258, § 1. The town admitted to that allegation in its amended answer and moved for summary judgment[4] on the ground that the plaintiff's "general unqualified release" of Curtis "precludes further action against the [t]own. . . ." The motion was allowed, and the plaintiff appeals from the ensuing summary judgment.

In ordering judgment for the town, the judge, quoting from *Dinsky* v. *Framingham*, 386 Mass. 801 (1982), noted that the Supreme Judicial Court has interpreted the language of G. L. c. 258, § 2,[5] to mean that "actions brought under the Act are governed by the same principles that apply to actions involving private parties," and that the Act, in abrogating the doctrine of governmental immunity "did not create any new theory of liability" but "simply removed the defense of immunity in certain tort actions against the Commonwealth, municipalities and other governmental subdivisions." *Id.* at 804. He determined that, since it was agreed that Curtis was in the employ of the town at the time of the accident, the town's liability for her alleged negligence or wrongdoing was grounded on the theory of "respondeat supe-

mum amount of Curtis's coverage, "to protect itself from additional exposure" due to doubt as to Curtis's status at the time of the accident.

[3]Prior to commencing suit, the plaintiff duly sent a notice of claim to the defendant pursuant to G. L. c. 258, § 4.

[4]The town, in its memorandum in support of its motion for summary judgment, admitted that the Bourne council on aging is a body established pursuant to G. L. c. 40, § 8B, and a by-law of the town.

[5]General Laws c. 258, § 2, as inserted by St. 1978, c. 512, § 15, provides in pertinent part that "(p)ublic employers shall be liable for . . . personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances. . . ."

rior." Citing *Elias* v. *Unisys Corp.*, 410 Mass. 479 (1991), he noted that where only the employee has committed the wrongful act the employer is held liable not as a joint tortfeasor with its employee but rather on the principle of derivative or vicarious liability. He concluded that, in circumstances of derivative liability, the plaintiff's general release of Curtis operated also to release the town from liability and preclude the plaintiff's action against it. We agree.

It is settled law that "a general release given to an agent will preclude a subsequent action against [the] principal." *Elias* v. *Unisys Corp.*, *supra* at 482. We are unaware, however, of any Massachusetts case addressing the issue of the effect of a release of a public employee on the public employer's liability under the Act. The plaintiff, selectively relying on case law under the Federal Tort Claims Act, argues that the common law doctrine of releases is not applicable to public employers because it has been superseded by the Act. She contends that, in circumstances in which a public employee is immune from liability, her release is a nullity and, therefore, should not extend to a public employer. She also claims the common law doctrine is based upon the employer's right of indemnity, and given the absence of such a right under the Act "there is no reason to apply the common law rule that a release of an employee operates to release an employer." She further argues that the issue of her intent in releasing the employee is material and should not be resolved by a motion for summary judgment. Lastly, she maintains that she is entitled to full satisfaction and that public policy is not violated when an immune employee is released prior to the commencement of an action against a municipality under the Act.

It is established that since the Act "is modeled closely on the Federal Tort Claims Act [the Federal Act]," our construction of the (Massachusetts) Act ordinarily should be "guided by the construction given the parallel Federal statute by the Federal courts." *Howard* v. *Burlington*, 399 Mass. 585, 589 (1987). See Glannon, Governmental Tort Liability under the Massachusetts Tort Claims Act of 1978, 66 Mass.

L. Rev. 7, 9-10 (1981). The Federal courts, however, are divided with respect to the issue before us and, therefore, do not provide clear guidance. Some decisions, straightforwardly applying State law, hold that a release of the employee bars a suit against the United States under the Federal Act. See *Bacon* v. *United States*, 321 F.2d 880, 883-884 (8th Cir. 1963); *Scoggin* v. *United States*, 444 F.2d 74, 75 (10th Cir. 1971). Others reach a contrary result, construing local law in light of the provisions of the Federal Act creating an exclusive remedy against the government to conclude that statutory liability under the Federal Act was primary and superseded any liability determined under principles of respondeat superior. See *Munson* v. *United States*, 380 F.2d 976, 979 (6th Cir. 1967); *Garrett* v. *Jeffcoat*, 483 F.2d 590, 592-593 (4th Cir. 1973). Some of the Federal decisions permitting suit against the government rely on local law that does not clearly distinguish — as does *Elias* v. *Unisys Corp.*, *supra* at 483 — between joint tortfeasor liability and derivative liability. See *Branch* v. *United States*, 979 F.2d 948, 951-952 (2d Cir. 1992). In other cases the claimant expressly had reserved rights against the governmental employer, a circumstance not present in this case.[6] See *Munson* v. *United States*, *supra* at 977; *Garrett* v. *Jeffcoat*, *supra* at 592.

The direct applicability of our case law relating to private parties may be questioned due to its reliance on the employer's right of indemnity. In *Elias* v. *Unisys Corp.*, *supra* at 483, the court rejected the proposition that allowing an injured party to pursue a principal, after having released its agent, would be fair to the agent and would encourage settlements, noting that a derivatively liable and blameless principal would have a right to indemnification for any amount it was compelled to pay to a plaintiff. Therefore, "[a]n agent who might be inclined to settle with a plaintiff would not necessarily terminate litigation or buy peace with a settle-

---

[6]The plaintiff's release contained a reservation of her rights with respect to Curtis's "Personal Injury Protection coverage." As to the effect of an express reservation against a private principal, see *Karcher* v. *Burbank*, 303 Mass. 303, 308-309 (1939).

ment." *Ibid.* In similar circumstances, the avoidance of such a "circuity of action" has been a factor in precluding suit against a private employer who is liable solely on the theory of respondeat superior. *Karcher* v. *Burbank*, 303 Mass. 303, 307 (1939). *Richmond* v. *Schuster Express, Inc.*, 16 Mass. App. Ct. 989, 990 (1983).

The Act makes no provision for indemnification of a governmental employer with respect to payments required to be made by it under the statute. The absence of such a provision has been held to bar reading an indemnity right into the cognate Federal statute. *United States* v. *Gilman*, 347 U.S. 507 (1954). Nothing in the Act supports a contrary conclusion. That a governmental employer does not have a right of indemnity against its employee under the Act, however, of itself, does not require that we abandon settled principles if the result does not accord with the statutory scheme of G. L. c. 258, or the salutary objective, recognized in *Elias* v. *Unisys Corp.*, *supra* at 483, of fairness to the employee.

A claim against a "public employer" as that term is defined in G. L. c. 258, § 1, should be grounded on evidence that the harm complained of was caused by "the negligent or wrongful act or omission of [a] public employee while acting within the scope of his office or employment. . . ." G. L. c. 258, § 2. A claimant is bound to know that evidence placing the act or omission complained of within the language of the statute immunizes the wrongdoing employee from liability. To permit a party to ignore that immunity by making and releasing a claim against the employee and then to bring suit against the public employer rewards the complainant for not honoring the immunity established by the statute and exposes the employee to unnecessary claims. Conversely, if the evidence places the wrongdoer outside the zone of immunity (because the wrongdoer was not a public employee, was not acting within the scope of employment, or because the wrongful act was intentional, constituted a civil rights violation, or is not cognizable under the Act[7]), allowing a claim-

---

[7]General Laws c. 258, § 10, places several types of claims outside of the statute.

ant who has settled and released such a claim to bring a suit against the public employer undermines the finality that settlement with a sole wrongdoer generally should achieve.

In cases of doubt whether the wrongdoer is immune from liability, as may have been the case here, declaratory relief or joinder of the employee and employer in a single action could be sought. Thus the claimant and the public employer would not be involved in any more litigation than would result if the claimant who has accepted a release were permitted to bring a later suit against the employer.

Moreover, where a release is given to a wrongdoer in the circumstance where there is a legitimate question regarding her personal liability, if the release does not preclude action against the blameless public employer, the wrongdoer's purchased peace would be short-lived in view of her obligation under G. L. c. 258, § 2, as inserted by St. 1978, c. 512, § 15, as a purported public employee to "provide reasonable cooperation to the public employer in the defense of any action brought under [the Act]." Failure to provide such cooperation, which presumably includes full participation in pretrial discovery as well as any trial, exposes the public employee to potential joint liability with the public employer. G. L. c. 258, § 2. The position espoused by the plaintiff, therefore, would serve as an incentive to claimants to bring claims against the wrongdoer as a prelude to suit against the public employer while at the same time providing a disincentive to the settlement of those claims.

Beyond arguing that the common law rule of release has been superseded by the Act,[8] the plaintiff advances no convincing reason against application of that rule. Her claim to entitlement to "full satisfaction" simply fails to address the issue of the legal effect of the release.

---

[8]We note the plaintiff's argument that the construction clause of the Act, St. 1978, c. 512, § 18, repealed the common law doctrine of release with respect to public employees, only to point out that the case relied on by her, *Rogers* v. *Metropolitan Dist. Commn.*, 18 Mass. App. Ct. 337 (1984), expressly states that the repealing language in that clause "provides . . . that any inconsistent *statutory* provision not mentioned in the savings clause shall not apply" (emphasis supplied). *Id.* at 339.

The plaintiff's reliance on *Cram* v. *Northbridge*, 410 Mass. 800 (1991), in support of her claim that her intent in giving the release is material is misplaced. There, the released party was not alleged to be an employee of the defendant municipality. Implicated, therefore, was the issue of alleged joint liability and not vicarious liability based on respondeat superior. *Id.* at 804 n.5. In that case, the Supreme Judicial Court adopted the "intent rule" in its interpretation of G. L. c. 231B, § 4, which abolished the common law unity of discharge doctrine with respect to joint tortfeasors. As we have indicated, it is our conclusion that the Act has not altered the rule that a general release of an agent discharges his principal from liability. The plaintiff has advanced no support for the application of an intent analysis to that rule.

*Judgment affirmed.*