168 F.3d 1133
 99 Cal. Daily Op. Serv. 907, 1999 Daily
Journal D.A.R. 1159
Joe Lee KEE, individually and as personal representative of
the Estate of Etta Kee; Louise Kee Nargo;
Eleanor Towne; David Nargo, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 97-17347.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 10, 1998.
Decided Feb. 2, 1999.
 
 Robert N. Hilgendorf, Santa Fe, New Mexico, for the plaintiffs-appellants.
 Ann E. Harwood, Assistant United States Attorney, Phoenix, Arizona, for the defendant-appellee.
 Appeal from the United States District Court for the District of Arizona; Earl H. Carroll, District Judge, Presiding. D.C. No. CV-96-00871-EHC.
 Before: FLETCHER, FERGUSON, and THOMPSON, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 Etta Kee died when the car in which she was a passenger collided with a car driven by a federal employee acting within the scope of her employment. The United States now claims that Kee's representative and the other people in the car are foreclosed from suing the United States because they signed a release with the employee. We reject the United States' argument and reverse the district court.
 
 I. BACKGROUND
 
 2
 Louise Nargo, Eleanor Towne, David Nargo, and Etta Kee were driving on Navajo Route 4 in Cottonwood Arizona on February 4, 1994. Bessie Tullie, a United States employee acting within the scope of her employment, was driving her personal automobile in the opposite direction and lost control of her car, crashing into the oncoming car. As a result of the accident, Etta Kee died at the scene of the crash, and Towne, Louise Nargo, and David Nargo suffered injuries.
 
 
 3
 On November 8, 1994, with the advice of counsel, Towne, Louise Nargo, David Nargo, and Joe Lee Kee, Etta Kee's representative (collectively, plaintiffs) signed a standard release prepared by Tullie's personal insurer, Farmers Insurance Company. The document was entitled "Release in Full of All Claims and Rights." Plaintiffs received $30,000 in consideration for the release. The standard language contained in the document stated that it released Bessie Tullie "from any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to" the accident. The parties altered one section of the standard form: they crossed-out the standard language releasing all of Tullie's "principals, agents, and representatives" and added that Tullie is released "but not her employer the U.S. Government (Tort Claim Act)."
 
 
 4
 After signing the release, plaintiffs presented a claim for damages against Tullie's employer, the United States, to the United States Department of the Interior; that claim was rejected on October 20, 1995. Then, on April 12, 1996, plaintiffs filed their complaint against the United States in the District Court of Arizona. The complaint alleged that because Tullie, a federal employee, was negligent in the operation of her vehicle, the United States was liable to plaintiffs under the Federal Tort Claims Act, 28 U.S.C. § 1346(b); 28 U.S.C. §§ 2671-80 (the Tort Claims Act or the Act).
 
 
 5
 The government filed a motion for summary judgment on January 30, 1997. It claimed that plaintiffs' release of Tullie in her personal capacity discharged the United States from liability because its liability was derivative of that of its employee who was no longer liable because of the release. On September 30, 1997, the district court granted the motion for summary judgment, finding that Arizona common law supported defendant's argument.
 
 II. STANDARD OF REVIEW
 
 6
 The court reviews de novo a grant of summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998). Viewing the evidence in the light most favorable to the nonmoving party, the court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 III. DISCUSSION
 
 7
 For the purposes of this motion, no genuine issues of material fact exist,[1] so the question before the court is whether the district court correctly applied the relevant substantive law. The district court found that under Arizona law a release of an employee also releases the employer regardless of any retained rights written into the release. That conclusion may or may not be a correct statement of general principles of Arizona law; however, because the district court ignored the immunity provision of the Federal Tort Claims Act, the district court's analysis of Arizona law is inapplicable to the determination we must make.
 
 
 8
 Under the Tort Claims Act, federal courts have exclusive jurisdiction over civil claims against the United States
 
 
 9
 for money damages ... for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 10
 28 U.S.C. § 1346(b). "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances ...." 28 U.S.C. § 2674.
 
 
 11
 In 1988, Congress amended the immunity section of the Act. See Pub.L. No. 100-694, § 5, 102 Stat. 4564. The amendment provides that as long as the claim is not one for a violation of the Constitution or authorized by federal statute, the only remedy an injured person has in a Tort Claims Act case is an action against the United States: "Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded ...." 28 U.S.C. § 2679(b)(1). As amended, the Act essentially "immunizes United States employees from liability" for negligent or wrongful acts committed within the scope of their employment. Green v. Hall, 8 F.3d 695, 698 (9th Cir.1993).
 
 
 12
 That section of the Act's effect on this case went unnoticed by the parties and the district court. Taking that section into account, a proper formulation of the issue before the court is as follows: Under the Act, the court must use Arizona law to determine if "a private individual under like circumstances" as the United States is here would be liable. 28 U.S.C. § 1346(b); 28 U.S.C. § 2674. Because of the immunity created by 28 U.S.C. § 2679(b)(1), the "like circumstances" provision requires the court to determine how Arizona would resolve the case of a private employer being sued for an accident caused by an employee who is immune.
 
 
 13
 Under Arizona law, it may or may not be the case, as the district court determined, that generally a release signed by an employee also releases the employer. However, the court need not answer that broad question. Rather, the court must look to Arizona law to determine the narrower question of whether the release of an immune employee also releases the employer. We must decide that precise question, a question that the district court, having not considered the immunity aspect of this case, failed to address.
 
 
 14
 Only two circuits have directly addressed the issue raised here, albeit of course with different state law applying.[2] In Garrett v. Jeffcoat, 483 F.2d 590 (4th Cir.1973), the plaintiff had executed a release against both the government employee and his insurance carrier for an accident that occurred in South Carolina. Id. at 592. The United States claimed that the release with the employee also released it from liability. Id. The Fourth Circuit agreed that South Carolina law supported the dismissal of the plaintiff's complaint, id.; however, the court found that the immunity provision[3] of the Tort Claims Act changed the matter. Id. at 593. The effect of that provision was to "make the United States solely liable for the negligent acts of its servants while operating motor vehicles within the scope of their employment and that there is no cause of action whatever against the employee himself." Id. The court concluded that because of that provision the "release of the servant from 'liability' for a negligent act has no effect whatever on the liability of the United States." Id.
 
 
 15
 The Tenth Circuit took a different approach in a similar case. In Scoggin v. United States, 444 F.2d 74 (10th Cir.1971), the plaintiff and the federal employee had executed a covenant not to sue. Id. at 74. The court concluded that the United States was not liable because Oklahoma law provided that a release of an employee through a covenant not to sue also released the employer. Id. at 75. Although the plaintiff raised the issue of the immunity created by 28 U.S.C. § 2679(b), the court rejected that "novel reasoning for it completely ignores the basic limitation on the government's liability for the torts of its employees as contained in the provisions of 28 U.S.C. § 1346(b)." Id. The court reasoned that the Tort Claims Act "does not contemplate the creation of governmental liability beyond that of private persons within the state." Id.
 
 
 16
 We believe that the Fourth Circuit's approach to this matter is the proper one because the Tenth Circuit's conclusion that the immunity provision has no effect essentially reads that provision out of the Act. We must give effect to every applicable provision of the Tort Claims Act and then look to state law to determine if there is liability. It is true, as the United States argues, that state law "applies not only as to the creation of liability but also as to release from liability." Air Transp. Assoc. v. United States, 221 F.2d 467, 471 (9th Cir.1955). However, that rule certainly does not obviate the need to look to and follow the various provisions of the Tort Claims Act itself.
 
 
 17
 Following both the immunity provision and the state-law provision of the Tort Claims Act is not difficult even though there is no state law on this issue. As the Sixth Circuit noted in a case with similar facts but occurring before the enactment of the immunity provision, because of the unique provisions of the Act "this situation would rarely arise under state law." Munson v. United States, 13 Ohio Misc. 243, 380 F.2d 976, 979 (6th Cir.1967). It is hard to imagine a situation in which Arizona courts would have to address the issue of the release of a statutorily immune employee and the liability of its employer. Thus, we are left to determine how Arizona would handle this situation were it to arise.
 
 
 18
 A simple logical analysis resolves the matter. In the run-of-the-mill Tort Claims Act case in Arizona (and everywhere else), the government employee is immune because of 28 U.S.C. § 2679(b). Nonetheless, Arizona law would certainly hold liable a private employer in the same situation (having an employee who was immune); if Arizona law were otherwise, the United States would never be liable in Tort Claims Act cases because of the employee's immunity. Thus, it is clear that Arizona law would not preclude liability in this situation even though the employee is immune.
 
 
 19
 Here, we have a scenario that is no different from the run-of-the-mill case except that the employee is not liable for two reasons: 28 U.S.C. § 2679(b)'s immunization and the release. There is no way to distinguish these two scenarios because in both the employee is not legally liable to the injured party but did in fact cause the injury. Thus, in this case, as in the run-of-the-mill case, we must also impose liability on the United States because the release changed nothing. In this and in all Tort Claims Act cases, because of the employee's immunity, the liability of the United States must be determined by looking to whether the employee is liable factually for the injury rather than whether the employee is liable legally for the injury. Any other approach, such as the argument advanced by the United States that Arizona law mandates that an employer's liability is determined by looking to the employee's liability, would result in the United States never being held liable because the employee is never legally liable. That result would be absurd and must be avoided. See Marlar, Inc. v. United States, 151 F.3d 962, 969 n. 13 (9th Cir.1998) (noting that "statutes should be interpreted so as to avoid patently absurd results").
 
 
 20
 The determinative factor must be only whether the facts of the incident would create liability in the employee were the employee not immune. The release here merely duplicates the effect of the statutory immunity; thus, it has no effect in this case. Accordingly, the United States can still be liable for the injury if, under Arizona law, the employee in fact negligently caused the injury. The district court erred in concluding otherwise, and its grant of summary judgment is REVERSED.
 
 
 
 [1]
 In their response to defendant's statement of facts in support of its motion for summary judgment, plaintiffs claim that they have "discovered facts which indicated negligence of the Government and reserve the right to amend their complaint accordingly." Because we find that the district court's grant of summary judgment was based on an error of law, we need not decide whether genuine issues of material fact also preclude summary judgment
 
 
 [2]
 The Second Circuit was faced with the issue but decided the case on other grounds. See Branch v. United States, 979 F.2d 948, 951 n. 2 (2d Cir.1992). In a case with facts occurring before the enactment of the Tort Claims Act immunity provision, the Sixth Circuit noted the effect of the immunity provision but did not base its decision on that section. See Munson v. United States, 13 Ohio Misc. 243, 380 F.2d 976, 978 (6th Cir.1967)
 
 
 [3]
 In 1973, the immunity provision of 28 U.S.C. § 2679(b) applied only to federal employees operating a motor vehicle within the scope of their employment. The current version of § 2679(b), enacted in 1988, applies to all federal employees acting within the scope of their employment