**Marilyn BRYANT, individually and on behalf of Vincent Jay Bryant; Tom Bryant; Joshua Homer Bryant; Sonny Bryant; and Teancum Bryant, Plaintiffs,**

v.

**The UNITED STATES of America; and Barbara Franc, Defendants.**

**CIV No. 98–1495PCT RCB.**

United States District Court, D. Arizona.

Jan. 8, 2000.

---

John D. Everroad, Kim Seibert Alvarado, Fennemore Craig PC, Phoenix, AZ, for Marilyn Bryant on Behalf of Vincent Jay Bryant, Tom Bryant, Joshua Homer Bryant, Sonny Bryant and Teancum Bryant.

John Robert Mayfield, U.S. Attorney's Office, Phoenix, AZ, Madeline Henley, U.S. Dept. of Justice, Torts Branch, Civil Division, Washington, DC, for U.S.

## ORDER

BROOMFIELD, District Judge.

Currently pending before the court are motions for partial summary judgment filed by Plaintiffs and Defendant United States. Both Plaintiffs and Defendant seek summary judgment on the issue of whether the New Mexico Medical Malpractice Act applies in this case to limit the liability of the United States. The court heard oral argument on June 14, 1999, at which time it took the matter under advisement. Having carefully considered the arguments of both parties, the court now rules.

## I. BACKGROUND

The facts necessary to rule on the two pending motions are straightforward. Plaintiffs have sued both the United States and Barbara Franc for an incident that occurred at the Northern Navajo Medical Center ("Medical Center") in Shiprock, New Mexico. The Medical Center is a federal hospital operated by the Indian Health Service ("IHS"), which is a division of the Public Health Service ("PHS"), which is a division of the Department of Health and Human Services ("HHS"). Plaintiff Vincent Bryant ("Vincent") entered the Medical Center on October 9, 1997, to have his wisdom teeth extracted. He suffered irreversible brain damage during the dental procedure.

Plaintiffs have brought a claim against the United States under the Federal Tort Claims Act ("FTCA") based on the allegedly negligent conduct of N. Whitney James, D.D.S.; Donald C. Thelen; and Dee Hutchison. James, a dentist stationed at the Medical Center, was a federal employee acting as an officer in the Commissioned Corps of PHS. He was the operating oral surgeon during Vincent's dental procedure. Thelen, a pharmacist stationed at the Medical Center, was also a federal employee acting as an officer in the Commissioned Corps of PHS. Hutchison was the Chief Executive Officer of the Medical Center and was a federal employee working for IHS.

## II. STANDARD OF REVIEW

To grant summary judgment, the court must determine that in the record before it there exists "no genuine issue as to any material fact" and, thus, "that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether to grant summary judgment, the court will view the facts and inferences from these facts in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248, 106 S.Ct. at 2510. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.* A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *See id.* at 250, 106 S.Ct. at 2511. Finally, if the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### III. DISCUSSION

Both Plaintiffs and the United States move for summary judgment on the issue of whether or not the New Mexico Medical Malpractice Act ("NMMMA") applies in this case to limit the liability of the United States. Under Fed.R.Civ.P. 56(d), the court can grant summary adjudication on such a specific issue because it will narrow the issues remaining for trial. *See* Fed. R.Civ.P. 56(d); *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D.Cal. 1997). Moreover, the applicability of the NMMMA involves questions of law and thus is suitable for decision by the court.

In order to determine the NMMMA's applicability, the court must analyze both it and the FTCA.

### A. The FTCA

■ The FTCA acts as a limited waiver of the United States' sovereign immunity from suits in tort. *See Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962). Under the FTCA, the United States is subject to suits for money damages for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

■ According to the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see Richards*, 369 U.S. at 6, 82 S.Ct. at 589; *Bunting v. United States*, 884 F.2d 1143, 1145 (9th Cir.1989). The purpose of this "like circumstances" test is to place the injured party in the same position that would have resulted had the victim been injured by any other similarly-situated private tortfeasor. *Hill v. United States*, 81 F.3d 118, 121 (10th Cir.1996), *cert. denied*, 519 U.S. 810, 117 S.Ct. 56, 136 L.Ed.2d 19 (1996). The "like circumstances" test does not require a court to find an actual private party under like circumstances as the United States, but rather to analogize to a hypothetical private party that is most reasonably analogous to the United States. *See Bush v. Eagle–Picher Indus.*, 927 F.2d 445, 452 (9th Cir.1991).

■ In addition to providing a limited waiver of sovereign immunity for the United States to tort actions arising from the negligence of federal employees within the scope of their employment, Congress has granted total immunity to federal employees for torts committed in the course of their employment. *See* 28 U.S.C. § 2679(b)(1). Therefore, a tort victim's

sole remedy lies against the United States. *See Kee v. United States,* 168 F.3d 1133, 1135 (9th Cir.1999).

### B. Applicable Law in Determining United States' Liability

■ The FTCA provides that the United States' liability for the tortious acts of its employees is determined according to "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because Vincent's injury occurred in New Mexico, the court must turn to the law of that state. *See Aguilar v. United States,* 920 F.2d 1475, 1477 (9th Cir.1990).

■ Under New Mexico's choice of law rules, the substantive law of New Mexico applies in this case. New Mexico follows the doctrine of lex loci delicti with regard to the choice of substantive law in tort actions, applying the law of the state where the wrong took place. *See Torres v. State,* 119 N.M. 609, 894 P.2d 386, 390 (1995); *In re Estate of Gilmore,* 124 N.M. 119, 946 P.2d 1130, 1133 (1997). The events here occurred in New Mexico. The parties, in fact, agree that New Mexico tort law applies in determining the liability of the United States under the FTCA. The parties instead disagree over the applicability of one specific portion of New Mexico's tort law, namely the NMMMA.

### C. The NMMMA

The NMMMA limits the amount of monetary damages a plaintiff suing for injury or death resulting from an act of medical malpractice can recover against a qualified health care provider. *See* N.M. Stat. Ann. § 41–5–6. Under the NMMMA, "[e]xcept for punitive damages and medical care and related benefits, the aggregate dollar amount recoverable by all persons for or arising from any injury or death to a patient as a result of malpractice shall not exceed six hundred thousand dollars ($600,000) per occurrence." *Id.* Furthermore, "a health care provider's personal liability is limited to two hundred thousand dollars ($200,000) for monetary damages and medical care and related benefits," with any amount due above that coming from the state's "patient's compensation fund." *Id.*

The NMMMA defines a "health care provider" to mean "a person, corporation, organization, facility or institution licensed or certified by this state to provide health care or professional services as a doctor of medicine, hospital, outpatient health care facility, doctor of osteopathy, chiropractor, podiatrist, nurse anesthetist or physician's assistant." N.M. Stat. Ann. § 41–5–3(A). To become qualified for the NMMMA's malpractice damages cap, a health care provider must file proof with the state that it is insured by a policy of malpractice liability insurance in the amount of at least $200,000 and must pay the surcharge assessed on health care providers, which goes to the state's patient's compensation fund. *See* N.M. Stat. Ann. §§ 41–5–5, 41–5–25.

### D. Does the NMMMA Cap the Liability of the United States in this Case?

The issue on which both sides seek summary judgment is whether the NMMMA applies in this case to limit the liability of the United States for non-economic damages to $600,000. Plaintiffs argue that under the "like circumstances" test of the FTCA, the most analogous private parties to the United States in this case are a private dentist, a private pharmacist, and a private hospital administrator. Plaintiffs contend that such private parties are not health care providers covered by the NMMMA, and, hence, the United States is not covered by the NMMMA either. In response, the United States argues that in this case it is actually most analogous to a private hospital, which is covered by the NMMMA. The conflicting arguments of the Plaintiffs and the United States raise a question regarding the nature of the FTCA's "like circumstances" test.

1. *Applicability of State Damage Cap Statutes Under the FTCA*

Under the FTCA's "like circumstances" test, the United States is liable for tort damages to the same extent as a private person under like circumstances. Because of this provision, courts, including the Ninth Circuit, have found that the FTCA incorporates limits or caps on liability contained in state law. *See, e.g. Aguilar v. United States,* 920 F.2d 1475 (9th Cir. 1990); *Taylor v. United States,* 821 F.2d 1428 (9th Cir.1987), *cert. denied,* 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988); *Nationwide Mut. Ins. Co. v. United States,* 3 F.3d 1392 (10th Cir.1993); *Carter v. ·United States,* 982 F.2d 1141 (7th Cir. 1992); *Lozada v. United States,* 974 F.2d 986 (8th Cir.1992). For example, in *Taylor,* the Ninth Circuit held that under the "like circumstances" test the United States was entitled to the protection of California's cap on medical malpractice damages. 821 F.2d at 1430–32.

Courts have held that the United States is entitled to the protection of such state statutes capping damages even if it did not strictly comply with all the procedural requirements of the statute. For example, in *Taylor,* the Ninth Circuit held that the United States was entitled to the protection of the state damages cap even though it was not in strict compliance with the statute's requirement of being licensed with the state. The court found that the United States, by virtue of the Supremacy Clause, had essentially deemed the hospital and its staff in question fit to provide health care services in the state. *Taylor,* 821 F.2d at 1431–32. The idea behind such rulings is that the United States is entitled to the protection of such caps on damages so long as it "complied with the objective underlying, although not the literal requirements of, provisions limiting private liability." *Nationwide Mut. Ins.*

*Co.,* 3 F.3d at 1397. This rule is known as the "functional compliance" test. *See id.* at 1396.

Although courts have routinely used the functional compliance test to place the United States within the protection of state caps on damages when it did not actually participate in the statutory scheme providing the cap, no court has ever used the test to protect the United States under a state damages cap that applies to private parties not analogous to the United States. For example, under the test, the United States falls under the protection of the NMMMA even if it did not contribute to the patient's compensation fund, so long as it is willing to pay the damages that would normally come out of that fund. *See Carter,* 982 F.2d at 1143–44. However, even under the functional compliance test, the United States is not protected by the NMMMA if it is not found analogous to a private party included within the definition of a health care provider. *See Hill,* 81 F.3d at 121.

2. *Applicability of NMMMA to Private Dentist, Pharmacist, and Hospital Administrator*

 Plaintiffs contend, and the United States does not dispute, that the NMMMA's definition of "health care provider" does not include dentists, pharmacists, or hospital administrators. Although no New Mexico state court has so determined, Plaintiffs argue that the plain terms of the NMMMA demonstrate that such individuals are not covered.[1]

Although no New Mexico state court decision is on point regarding the applicability of the NMMMA to dentists, pharmacists, and hospital administrators, the court agrees with Plaintiffs that the courts of New Mexico would determine that such

1. The only New Mexico state court decision cited by Plaintiffs is *Tanuz v. Carlberg,* 122 N.M. 113, 921 P.2d 309 (1996). *Tanuz* involved a dental malpractice claim, but the court of appeals never mentioned the NMMMA. This case provides no support for the argument that dentists are not health care providers under the NMMMA, as several possibilities exist as to why the court did not discuss the NMMMA. For example, the dentist may merely have failed to contribute to the patient's compensation fund.

individuals are not covered. The plain language of the NMMMA limits the definition of a "health care provider" to doctors of medicine, doctors of osteopathy, chiropractors, podiatrists, nurse anesthetists, physician's assistants, and certain health care facilities. Though listing several types of doctors, the NMMMA makes no mention of doctors of dentistry, pharmacists, or hospital administrators. Had the New Mexico legislature wished to include such individuals, they could have listed them along with the numerous other named health care positions. *See generally State ex rel. Clark v. Johnson*, 120 N.M. 562, 904 P.2d 11, 25 n. 6 (1995) (applying the doctrine of *expressio unius est exclusio alterius*, which means that the expression of one thing is at the exclusion of another). The New Mexico legislature expressed no intention that the list provided in the NMMMA for health care providers was not exhaustive.

The United States does not contest such a conclusion in its response to Plaintiffs' motion for partial summary judgment or in its motion for partial summary judgment. The United States instead argues that under the FTCA, it is most reasonably analogous to a private hospital, not a dentist, pharmacist, and/or hospital administrator.

3. *Under the "Like Circumstances" Test of the FTCA, to Whom is the United States Most Reasonably Analogous*

■ The parties present a unique question regarding application of state damage cap statutes under the FTCA: What happens when a state cap on damages would not protect the individual federal employee who was allegedly negligent if he was a private party but would protect the federal facility where the negligence occurred if that facility was a private one? This issue arises because private dentists, pharmacists, and hospital administrators are not covered by the NMMMA, but private hospitals are covered. Accordingly, Plaintiffs maintain that the United States should be placed in the shoes of the three individual tortfeasors and be analogized to a private

dentist, pharmacist, and/or hospital administrator, while the United States claims that it should be placed in the shoes of the individual tortfeasors' employer and be analogized to a private hospital.

The United States cites several cases for the broad proposition that its waiver of sovereign immunity under the FTCA works like the common law doctrine of *respondeat superior* liability. *See, e.g., Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S.Ct. 2227, 2229, 132 L.Ed.2d 375 (1995) (stating that cases against the United States under the FTCA "unfold much as cases do against other employers who concede *respondeat superior* liability"). It proceeds to argue that under the doctrine of *respondeat superior* the employee's negligence is imputed to the employer and, thus, the employer does not step into the shoes of the employee. Finally, it argues that under New Mexico law a hospital is liable for the negligence of its employees under the doctrine of *respondeat superior*. *See Reynolds v. Swigert*, 102 N.M. 504, 697 P.2d 504, 507–08 (1984). Thus, the United States contends that it is most analogous to a private hospital because the individual tortfeasors' actions took place at the Medical Center, which is a hospital run by IHS.

In response to the United States' argument, Plaintiffs claim that in most cases applying the FTCA's "like circumstances" test, courts have analogized the United States to a private party that most closely resembled the individual federal employee tortfeasor, not that tortfeasor's employer. *See, e.g., Aguilar*, 920 F.2d at 1477. The United States, however, cites FTCA cases where it was held to be in like circumstances with private hospitals. *See, e.g., Taylor*, 821 F.2d at 1431.

The parties cite only one case on point with the issue presented, *Knowles v. United States*, 91 F.3d 1147 (8th Cir.1996). In *Knowles*, the plaintiffs brought an FTCA action against the United States based on the allegedly negligent conduct of several employees, including medical services spe-

cialists, at an Air Force base hospital in South Dakota. *See id.* at 1148–49. South Dakota law caps the malpractice damages recoverable against health care providers, which are defined to include doctors, nurses, and hospitals but not medical services specialists. *See id.* at 1149–50. The United States argued that its liability based on the conduct of the medical services specialists should still be capped "because hospitals are covered, and the medical services specialists are hospital employees whose negligence will be charged to the hospital." *Id.* at 1150. The court rejected the United States' argument that it was most reasonably analogous to a private hospital, holding that it instead stood in the shoes of the medical services specialists. Because these employees would not be protected by South Dakota's cap on damages if they were private individuals, the United States was not entitled to the protection of the cap either. *See id.*

The Eighth Circuit's decision supports Plaintiffs' argument that this court should analogize the United States to a dentist, pharmacist, and/or hospital administrator in determining whether it falls within the coverage of the NMMMA. However, reviewing the Eighth Circuit's reasoning and the FTCA itself, this court cannot agree with the decision reached in *Knowles.*

The Eighth Circuit reasoned that because federal employees are immune from suit and because the FTCA states that the United States is liable to the same extent as a "private individual" under like circumstances, the United States must stand in the shoes of the federal employee. *Knowles,* 91 F.3d at 1150. This court cannot concur with such a reading of the FTCA. Other courts have not read the phrase "private individual" to exclude analogies of the United States to private employers. *See, e.g., LaBarge v. Mariposa County,* 798 F.2d 364, 369 (9th Cir.1986) (finding that a "private individual in like circumstances" to the United States would be a private employer), *cert. denied sub nom. County of Mariposa v. United States,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987). In fact, other language found in the FTCA supports the conclusion that courts should analogize the United States to private individuals and entities that most closely resemble it, not those that most closely resemble the federal tortfeasor employee. *See* 28 U.S.C. § 1346(b)(1). The FTCA authorizes suits against the United States based on the negligent conduct of its employees "under circumstances where the *United States,* if a private person, would be liable to the claimant." *Id.* (emphasis added). The FTCA does not authorize suits against the United States under circumstances where the *federal employee,* if a private person, would be liable to the claimant. Courts have relied on this language in determining that the FTCA's waiver of sovereign immunity works much like *respondeat superior* liability. *See Wood v. United States,* 995 F.2d 1122, 1125 (1st Cir.1993) ("The [FTCA's] waiver enables tort plaintiffs to bring against a special employer, namely the *federal government,* the same kind of ordinary tort action that plaintiffs often bring against *private* employers, namely an action claiming that an employee wrongfully hurt the plaintiff and that the employer is liable under the doctrine of *respondeat superior.*"); *see also Gutierrez de Martinez,* 515 U.S. at 420, 115 S.Ct. at 2229 (stating that cases against the United States under the FTCA "unfold much as cases do against other employers who concede *respondeat superior* liability"); *Bunting,* 884 F.2d at 1145 (stating that United States is liable under the FTCA for government employee's conduct "under the doctrine of respondeat superior"). Therefore, the court finds that the United States stands in the shoes of the private employer of a tortfeasor, not in the shoes of the private tortfeasor.

Although the Ninth Circuit has not directly ruled on the issue currently before this court, its decision in *Kee v. United States,* 168 F.3d 1133 (9th Cir.1999), provides some indication as to how it would resolve the issue. In *Kee,* the plaintiffs were injured in an accident involving a car driven by a federal employee. *Id.* at 1134.

After the accident, the plaintiffs signed a standard release with the federal employee in consideration for a $30,000 settlement. *Id.* The plaintiffs subsequently brought suit against the United States under the FTCA based on an allegation that the federal employee was negligent in the operation of her vehicle. *Id.* The United States claimed in a motion for summary judgment that the plaintiffs' release of the federal employee in her personal capacity released the United States from liability because its liability was derivative of that of its employee who was no longer liable due to the release. *Id.* The district court granted the government's motion, finding that under Arizona law a release of an employee also releases the employer. *Id.* at 1134–35. The Ninth Circuit reversed, finding that the United States was not discharged from liability under the FTCA based on the employee's release.

In reversing the decision of the district court, the Ninth Circuit stated that the lower court had ignored the effect of the FTCA's immunity provision for federal employees. Because of this immunity provision, the Ninth Circuit determined that "the 'like circumstances' provision [of the FTCA] requires the court to determine how Arizona would resolve the case of a private employer being sued for an accident caused by an employee who is immune." *Id.* at 1135. Specifically, the court held that the issue was whether under Arizona law the "release of an immune employee also releases the employer." *Id.* The court determined that an employer would not be released under such circumstances and that therefore the United States could be held liable despite the release. *See id.* at 1136.

The court finds the Ninth Circuit's holding in *Kee* instructive in determining how the circuit would decide the issue raised here of whether to place the United States in the shoes of the employer or the employee in determining the applicability of a damages cap. Had the Ninth Circuit placed the United States in the shoes of the employee in *Kee*, the United States would not have been liable because, based on the release, the employee would not have been liable. The Ninth Circuit instead placed the United States in the shoes of the employer. Likewise, this court places the United States in the employer's and not the employee's shoes.

The court recognizes a potential concern arising from a rule that the United States is liable as the tortfeasor's employer rather than as the tortfeasor. Because of the immunity granted federal employees, gaps in liability could arise unless the United States is placed precisely into the shoes of the federal employee for purposes of liability.[2] This concern, however, does not persuade the court to stray from the clear language of the FTCA. The Supreme Court has upheld gaps of liability under the FTCA before. *See, e.g., United States v. Smith,* 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991) (finding neither federal employee nor United States liable because they both fit within exceptions). The court cannot go beyond the language of the FTCA in waiving the United States' sovereign immunity.

■ Accordingly, the court concludes that the United States is liable under the FTCA to the same extent as would be an analogous private employer. This conclusion, however, does not resolve the issue of whether the United States is entitled to the protection of the NMMMA's cap on medical malpractice damages. An issue still remains as to what type of private employer the United States is most analogous to in this case.

The United States argues that because Vincent's dental procedure took place at a federal hospital run by IHS, the most anal-

---

2. For example, if in this case James, Thelen, and Hutchison were private employees and thus not immune from suit, Plaintiffs could sue them and not be subject to the NMMMA's cap on damages. Under the FTCA, however, they can only sue the United States. Therefore, unless the United States stands precisely in the shoes of the federal employees, Plaintiffs may be left in a worse position under the FTCA than they would against a private party.

ogous private employer would be a hospital. In response, however, Plaintiffs contend that because James, Thelen, and Hutchison were not employees of the Medical Center but rather were merely stationed there, a private hospital would not be the most analogous private employer.

Because the federal government can never be exactly like a private actor, the court merely must look for the most reasonable analogy. *See LaBarge,* 798 F.2d at 367. The court finds that the most reasonable analogy in this case is a private hospital. Plaintiffs argue that the three individual tortfeasors here were not employees of the Medical Center; rather James and Thelen were officers in the Commissioned Corps of PHS and Hutchison was a civil service employee of IHS, and all three were merely stationed at the Medical Center, which is operated by IHS. Though recognizing the logic of Plaintiffs' argument, the court does not agree. IHS operates the medical center and is an operating division of PHS. If this were a case where the employees came from a department of the government that had no control over the Medical Center, even remote, the court might find more merit to Plaintiffs' argument. In that case, the government would be acting more as an independent contractor providing professional staff to an independent hospital. But the employees here came from the same department that operates the hospital. *See* 25 U.S.C. § 1661(b). Although PHS and IHS may staff their hospitals differently than the private sector, a private hospital remains the most reasonable analogy.

## IV. CONCLUSION

The court finds that in this case the United States is most reasonably analogous to a private hospital whose own employees allegedly acted negligently. Because the NMMMA caps damages for medical malpractice claims brought against hospitals, the United States' liability in this case is limited to $600,000, except for recovery of medical care and related benefits, which are not capped.

IT IS ORDERED denying Plaintiffs' Motion for Partial Summary Judgment, filed April 5, 1999 (doc. 37).

IT IS ORDERED granting Defendant United States' Partial Motion for Summary Judgment, filed May 5, 1999 (doc. 44).