MUNSON, APPELLANT, *v.* UNITED STATES, APPELLEE.
(Two cases.)

[Cite as Munson v. United States, 13 Ohio Misc. 243.]

(Nos. 17285, 17286—Decided August 4, 1967.)

United States Court of Appeals.

Mr. *Craig Spangenberg* and Messrs. *Spangenberg, Hasenflue, Shibley & Traci*, for appellants.

Mr. *John F. Bishop*, Mr. *J. William Doolittle*, Mr. *Morton Hollander* and Mr. *Merle M. McCurdy*, for appellee.

Before WEICK, Chief Judge, and PECK and COMBS, Circuit Judges.

WEICK, Chief Judge. On April 3, 1961, Venneth L. Beard, a Secret Service agent, acting in the course of his official employment, was involved in an automobile collision with plaintiff, Lois Munson, in Toledo, Ohio. As a result of this accident a cause of action for negligence arose on her behalf against Beard personally and against the United States as his employer, under the Federal Tort Claims Act, 28 U. S. Code Sections 1346(b) and 2671-2680. In addition, another set of actions, for loss of services and consortium, arose against the same two defendants on behalf of D. James Munson, the husband of Lois Munson.

Mrs. Munson brought suit against Beard individually in the Ohio courts and later she and her husband filed separate actions against the United States in the District Court. After negotiations between plaintiff's counsel and Beard's liability insurer, the Munsons executed an instrument entitled "Covenant Not to Sue" for the benefit of Beard, in exchange for the payment of $10,000, the full limits of Beard's insurance policy. The covenant recited that the payment was neither represented nor intended as full compensation for the Munsons, nor was it to constitute a release or full satisfaction. Finally, it stated that the Munsons "specifically reserve unto themselves all their rights and causes of action against the United States of America under the Federal Tort Claims Act * * *."

It is the effect of this express reservation that is at issue in this appeal.

After the Munsons settled with Beard in the state suit,

the United States moved for summary judgment in the two suits against it in the Federal Court. The basis for this motion was the contention that the covenant not to sue constituted in fact a full and complete release of Beard and therefore of his employer, the United States, despite the express reservation to the contrary. The District Court granted the motion, holding that under Ohio law a release of the tortfeasor primarily liable (Beard, the servant) necessarily released the tortfeasor secondarily liable (United States, the master). From this order plaintiffs now appeal.

The Federal Tort Claims Act provides, in general, for a waiver of sovereign immunity to which the Federal Government is entitled. Under its basic provisions the United States is liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their official employment "[U]nder circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. Code Section 1346(b); see also 28 U. S. Code Section 2674. This language means that state law governs these actions, and this is so in the present case. *Matland* v. *United States* (3rd Cir. 1961), 285 F. 2d 752; *Air Transport Associates, Inc.,* v. *United States* (9th Cir. 1955), 221 F. 2d 467.

Although this provision generally subjects the United States to the same liabilities as other employers under state law doctrines of *respondeat superior,* there are several unusual features of the Tort Claims Act which do not correspond to familiar procedures under state law.

It seems clear that under the Act as it read at the time of this accident, plaintiff could proceed against the individual employee, or the United States, or both at the same time, although she would be entitled to but one satisfaction. *Moon* v. *Price* (5th Cir. 1954), 213 F. 2d 794.

However, Congress also provided specifically by statute that a judgment against the Government constitutes a complete bar to any later action by the claimant against the employee of the Government who caused the injury. 28 U. S. Code Section 2676. Further, unlike the usual em-

ployer, the Government has no right to exact any indemnity from the employee who caused the injury, for which it, as master, is held liable alone. *United States* v. *Gilman* (1954), 347 U. S. 507, 74 S. Ct. 695, 98 L. Ed. 898. The only relief which the United States may claim is a limited right of indemnity from the liability insurer of the negligent employee, where the Government qualifies as an insured under the terms of the policy. *Grant* v. *United States* (2d Cir. 1959), 271 F. 2d 651; *Irvin* v. *United States* (D. S. D. 1957), 148 F. Supp. 25; *Rowley* v. *United States* (D. Utah 1956), 140 F. Supp. 295.

The issue thus framed is whether or not Munsons' attempt to reserve their rights against the United States after their settlement with Beard was effective under the law of Ohio, read in the light of the special provisions and interpretations of the Federal Tort Claims Act. It is important to note that although this question appears to be a matter of first impression concerning a case of settlement for full policy limits, our decision will be of limited future practical effect. This is so because the 1961 Amendments to the Federal Tort Claims Act now require a claimant to proceed directly against United States as his exclusive remedy. 28 U. S. Code Section 2679(b). Thus in future cases under the Act it seems unlikely that releases and/or covenants given by an employee will play a part in settlements or litigation.

For many years Ohio recognized and applied the old common-law rule that a release of one joint or concurrent tortfeasor automatically released the others, regardless of the intent of the parties to the release, or whether full satisfaction of plaintiff's claim had been made. *Ellis* v. *Bitzer* (1825), 2 Ohio 89. The Ohio Supreme Court later rejected such an abstract "metaphysical" doctrine in favor of the modern view that the intent of the parties governs the interpretation of releases with express reservations of rights against third parties in cases where full compensation for plaintiff's injury has not been made. *Adams Express Co.* v. *Beckwith* (1919), 100 Ohio St. 348.

In the case of so-called primary and secondary tortfeasors, however, the older rule of automatic release is still

enforced. Thus, a release of the negligent servant necessarily releases his master. Since the rule in primary-secondary tortfeasor situations was an outgrowth of the original doctrine in regard to joint and concurrent tortfeasors, it is important to determine the reason why the modern trend of the *Adams Express case* has not been applied to the master-servant relation.

Although there are no Ohio cases directly in point where a release of the servant was held to release his master, the authorities on the subject emphasize that the reason for such a rule was to protect the normal right of indemnity which the master holds by subrogation through any judgment rendered against him in favor of the plaintiff.

"A settlement with and release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." *Losito* v. *Kruse* (1940), 136 Ohio St. 183, 188, 126 A. L. R. 1194.

That is, where plaintiff recovers from the master, he, in turn, is subrogated to plaintiff's rights against the servant and may recover from him.

However, where plaintiff has first released the servant, the master would be unable to pursue his indemnity from the servant since his claim is based upon that of the plaintiff and would be blocked by the agreement concluded between plaintiff and the servant. In that case, no action would be allowed against the master since he would thus be forced to bear the entire burden of the servant's tort. See *Losito* v. *Kruse, supra; Herron* v. *City of Youngstown* (1940), 136 Ohio St. 190, 198-199; *Bello* v. *City of Cleveland* (1922), 106 Ohio St. 94, 106.

It should be clear that the primary-secondary characterization of the relationship between master and servant is a definition of their rights between themselves and has no bearing on their liability to the third party who has been injured. Thus, the master's right to indemnity from his servant, by way of subrogation to plaintiff's claims, is the crucial factor in releasing the master when the servant is

released. It is not, as the Government contends, based on some abstract dissolution of the underlying liability to plaintiff which occurs when the servant releases him for less than full compensation and plaintiff reserves his rights against the master. That view would seem to be an erroneous application of the rule that where master and servant are joined by plaintiff in one suit, a verdict against the master will not be allowed when the servant is simultaneously exonerated. In that situation, the master's sole liability depends upon a finding of liability on the part of the servant, so he cannot be held accountable where there is no such finding.

In the case of a settlement with the servant, no indication of the servant's liability is given and there is no reason to release the master *except* to protect him from having to bear the full burden of plaintiff's remedy when his rights against the servant are destroyed.

In the present case, the master, the United States, is entitled to no indemnity from its employee should plaintiff recover from it. *United States* v. *Gilman* (1954), 347 U. S. 507, 74 S. Ct. 695, 98 L. Ed. 898.

Since this situation would rarely arise under state law, there are no Ohio cases dealing with a release of a servant and a later attempted action against a master who has no rights against the servant. However, as we have shown above, the sole reason for the Ohio rule on master-servant releases was the protection of the master's right to indemnity. Where that reason ceases to exist, we believe that the Ohio courts would not apply the rule.

The United States has suffered no prejudice whatever to its limited indemnity rights against the employee's insurer, since the Munsons exhausted the policy limits in their settlement and the $10,000-payment would naturally be deducted from any recovery which they receive through their suits against the United States. Actually, they have saved the Government the trouble and expense of a second suit against the insurer.

The United States asserts that the recent case of *Diamond* v. *Davis Bakery, Inc.* (1966), 8 Ohio St. 2d 38, undermines the line of reasoning based on the indemnity factor.

.

.

In that case the court allowed an action against the retailer of an adulterated salami, after plaintiff had settled with the manufacturer for less than full satisfaction. Noting that the retailer must certainly have an ''action over'' against the manufacturer, the Government urges that this shows that the right of indemnity is of no importance in deciding whether an express reservation of rights is effective. Beyond the fact that the holding of *Diamond* seems squarely to support our decision here, we would note that the Ohio Supreme Court made no mention either way of the indemnity factor in that case as it had in the other cases cited above.

Further, despite the wording of the syllabus by the court, it is not altogether clear that it did not conceive of this as a case of concurrent tortfeasors with independent liabilities within the normal rule of *Adams Express Co.* v. *Beckwith* (1919), 100 Ohio St. 348. See 8 Ohio St. 2d 38 at 45.

Finally, since the Ohio court did not express its view either way in *Diamond*, there is the possibility that it may not allow an ''action over'' by the retailer against the manufacturer, should plaintiff successfully sue the retailer.

The federal cases interpreting the Tort Claims Act have not dealt with precisely this situation where a settlement is made with the employee for the full limits of his policy with rights expressly reserved against the United States.

In *United States* v. *First Security Bank of Utah* (10th Cir., 1953), 208 F. 2d 424, 42 A. L. R. 2d 951, the court asserted two grounds for enforcing the reservation and allowing the suit against the Government, the grounds being:

(1) Under state [Utah] law the court construed the liability as that of concurrent tortfeasors and so applied the modern rule honoring express reservation of rights; and

(2) By interpreting the intent of Congress in enacting 28 U. S. Code Section 2676, the court reasoned that if Congress had wished to provide that a release of the servant should release the Government as well, it would have noted specifically such a rule in the statute as it did in the

reverse case under Section 2676. This second ground was followed in *Friday* v. *United States* (9th Cir., 1957), 239 F. 2d 701.

Two other cases, however, have held that a release given to the employee necessarily released the United States. *Land* v. *United States* (10th Cir., 1965), 231 F. Supp. 883 (N. D. Okla., 1964), aff'd 342 F. 2d 785; *Bacon* v. *United States* (8th Cir., 1963), 321 F. 2d 880.

While the United States relies heavily on those two cases, we think that they differ in two important respects from the present case. First, in each of these cases it seems clear that the settlement effected with the employee was for an amount less than the full policy limits, thus blocking the Government's indemnity rights as to the remaining portion of the policy. Such a settlement certainly prejudices the United States and differs from the present settlement where the full amounts available from the insurer have already been applied for the benefit of both the employee and the Government.

Second, each of the plaintiffs in *Land* and *Bacon* included in their releases a provision releasing not only the employee but his insurer as well. This would be an additional factor prejudicing any rights which the United States might have asserted against the insurers.

Taken together, these two factors justify a release of the United States in those two cases and the absence of these factors from the present case justifies the opposite result.

One final consideration supports our decision here; that is, the need to avoid arbitrarily asymmetrical results in a case where the plaintiff has alternate courses of action on the same cause. Thus, had plaintiffs pursued their remedy directly against the United States, as they are now required to do under the 1961 Amendments, there would be no question of their right to recover and of the Government's right to limited reimbursement from the insurer. Or, had plaintiffs refused to settle with the employee, proceeded to trial and obtained a judgment in excess of the employee's policy limits, they could certainly have commenced additional proceedings against the United States. *Moon* v. *Price* (5th Cir., 1954), 213 F. 2d 794.

Both of these courses of action would yield the same result as allowing the plaintiffs to settle for full policy limits with the employee and then to pursue their remedy against the Government. There appears to be no substantial reason of public policy why all three procedures should not yield the same result, especially in view of the normal inclination of our courts to foster fair settlements without litigation.

For these reasons, the judgment of the District Court is reversed and the causes remanded for further proceedings in conformity with this decision.