**John E. GARRETT, Plaintiff,**

v.

**Johnny Wesley JEFFCOAT and the United States of America, Defendants.**

**Civ. A. No. 72–612.**

United States District Court,
D. South Carolina,
Aiken Division.

Oct. 26, 1972.

W. G. Lynn, Jr., Henderson, Salley, Bodenheimer & Lynn, Aiken, S. C., for plaintiff.

Robert E. Johnson, Williams & Johnson, Aiken, S. C., and Joseph L. Nettles, Columbia, S. C., for defendant Jeffcoat.

Ryan C. Shealy, Asst. U. S. Atty., for John K. Grisso, U. S. Atty., Columbia, S. C., for defendant United States.

ORDER

SIMONS, District Judge.

This matter is before the court upon Motion of the defendant, The United States of America, to dismiss the within action instituted by plaintiff pursuant to the Federal Tort Claims Act, 28 U.S. C. § 1346(b) and § 2671 et seq.

It appears from the record that on June 15, 1971, the plaintiff was a passenger in an automobile owned and being operated by Hastings A. Thomas, an employee of the United States Department of Agriculture who was at the time acting within the scope of his employment. The Thomas automobile was involved in a collision with another vehicle driven by the defendant, John Wesley Jeffcoat, which resulted in personal injuries to the plaintiff. Thereafter, the plaintiff filed a claim against the government for his damages. Plaintiff contends that the government was slow to react to the claim, and meanwhile plaintiff's medical creditors were demanding payment of accounts incurred as a result of the accident. In this context the plaintiff accepted an offer of Thomas' personal insurer for settlement in an amount equal to the full limits of the insurer's policy, even though no suit had been filed against Thomas, no demand had been made against him, and no action had been taken by plaintiff to hold him personally liable. The terms of the settlement were embodied in a document entitled "Release." [1]

1. Said Release is as follows:
    In consideration of the payment to us of the sum of Ten Thousand ($10,000.00) Dollars by The Hartford Insurance Company on its behalf and on behalf of Hast-

ings A. Thomas, the receipt and sufficiency whereof is hereby acknowledged, we, John E. Garrett and Mattie B. Garrett, do hereby release the said Hastings A. Thomas and The Hartford Insurance

It is quite clear from the terms of this instrument that it was not intended to be a full settlement, nor to release the defendant United States of America.

The sole issue raised by this defendant's Motion is whether this release of the government employee and his personal insurer serves also to release the United States.

It is undisputed that the effect of the release is to be determined according to the law of South Carolina. However, the court is unable to discover any decision of the Supreme Court of this State which deals precisely with the question of whether a release of a servant also releases the master.

However, this court was faced with that issue in Seaboard Air Line Railroad Co. v. Coastal Distributing Co., 273 F. Supp. 340 (D.S.C.1967). There a truck owned by Coastal and being driven by its employee Hill collided with Seaboard's train, and thereafter the railroad brought suit against Coastal and Hill for damages to its locomotive.

Prior to trial, Seaboard settled with Hill, obtaining from the employee a release. At the trial, Coastal moved to dismiss the railroad's action against it, contending that the plaintiff's settlement with Coastal's employee thereby exonerated it, since Coastal's liability rested solely on the doctrine of *respondeat superior*. Thus, except for considerations arising out of the Federal Tort Claims Act, discussed below, *Seaboard* is on all fours with the present action.

Judge Russell, then of this court, said in *Seaboard* that although a master and servant are suable jointly, they are not strictly joint tort-feasors, for the liability of the master, resting solely on the principle of *respondeat superior,* is derivative and secondary. Since the liability is merely derivative and secondary, Judge Russell found that it logically followed that:

> [T]he release, exoneration, "acquittal" of the servant Hill operates as a release or acquittal of Coastal. This is not merely upon the theory that the employer Coastal is denied the right

Company or either of them, for bodily injuries, personal injuries, disability, whether permanent or temporary, disfigurement, pain and suffering, loss of consortium and any and all other elements of loss, injury or damage whatsoever, known or unknown, arising or to arise to us as a result of an accident which occurred on or about June 15, 1971, when a vehicle operated by Hastings A. Thomas collided with a vehicle being driven by John Jeffcoat, in the Salley area of Aiken County, South Carolina.

It is stipulated and agreed that the payment and receipt of the above mentioned sum of money and the giving and taking of this Release is and shall not be construed as an acknowledgment of liability or responsibility on the part of Hastings A. Thomas or The Hartford Insurance Company, or either of them, nor shall the payment and receipt of the said sum of money and the giving and taking of this Release be construed as an acknowledgment on the part of John E. Garrett that Hastings A. Thomas and The Hartford Insurance Company are in no way liable for the occurrence above described, but is the compromise of the claim which John E. Garrett has against Hastings A. Thomas arising out of said accident, in-

tended to absolve The Hartford Insurance Company of its responsibility arising out of this occurrence and to protect Hastings A. Thomas, individually, under the terms of the policy which The Hartford Insurance Company has issued to Hastings A. Thomas.

It is further expressly understood and agreed that this Release is solely for the benefit of Hastings A. Thomas and The Hartford Insurance Company and is not intended to inure to the benefit of The United States of America or any of its agencies, organizations, departments or institutions or any other person, organization or institution whatsoever.

It is further stipulated and agreed that the said sum is only a portion of the damages sustained; that the said John E. Garrett specifically reserves the right to make claim against the United States of America for said damages and realizes that the amount paid will be credited against any judgment obtained by him against the said United States of America for said damages.

This Release shall be binding upon John E. Garrett and Mattie B. Garrett, their heirs, assigns, executors and administrators.

to recover over against the employee, "but upon the ground that the sole basis of liability is the negligence or wrongdoing of the employee imputed to the employer under the doctrine *respondeat superior*; the acquittal of the employee of wrongdoing conclusively negatives liability of the employer." [Citations omitted]. 273 F. Supp. at 343.

Thus, the court granted Coastal's Motion to Dismiss, holding that the release of the servant likewise released the master.

There is other authority which supports such a rule. In 76 C.J.S. Release § 50b it is said:

> In a situation where several persons are not actively joint tort-feasors,[2] but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent; and it has been held that this is true despite an attempted reservation of rights against the person secondarily liable, since if the rule were otherwise, such person would be liable without having recourse against the person primarily liable, the latter having been released.
>
> . . .

Plaintiff maintains that this rule, as stated, should have no application to an action arising under the Federal Tort Claims Act. He argues that the reason for the rule, as stated above, is to protect the principal's indemnity over against his servant. That logic cannot apply to this case, for United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L. Ed. 898 (1954), held that the government may not recover indemnity from one of its employees after it has been held liable under the Federal Tort Claims Act. But

the right to seek indemnity is not the only reason for the rule; nor, this court would submit, is it the most important reason. As Judge Russell pointed out in *Seaboard,* the only ground upon which the master may be held liable under such facts is for the delicts of the servant. If the servant is excused from his tort, what ground remains to hold the master? Logic dictates that if the servant, whose negligence is imputed to the master, is exonerated from his conduct, then the master, whose liability is derivative, is necessarily also excused.

Plaintiff further contends that the rule that the release of the servant also releases the master should not apply here because of the recent case of Bartholomew v. McCartha, 255 S.C. 489, 179 S.E.2d 912 (1971), decided subsequent to *Seaboard.* In that case the South Carolina Supreme Court rejected the common-law rule that the release of one of multiple joint tort-feasors releases all. Rather, the court specifically embraced the view that "the release of one tortfeasor does not release others who wrongfully contributed to plaintiff's injuries unless this was the intention of the parties, or unless plaintiff has, in fact, received full compensation amounting to a satisfaction." 179 S.E.2d at 914. Plaintiff validly asserts that the liability of a master and servant is joint and several,[3] and thus would apply the *Bartholomew* rule to the instant facts. But *Bartholomew* did not involve a master-servant situation—the joint tort-feasors there sued were the two drivers of separate vehicles, both of whom plaintiff claimed were liable for his injuries. Under those circumstances the Court held that the plaintiff's taking a covenant from one of the defendants there did not bar proceeding against the other defendant. The significant relationship between the United States and Thomas in the current case is not that they are potential joint tort-feasors, but that

---

2. Counsel for plaintiff conceded during oral argument that there were no independent acts of liability by the United States, and the government's liability de-

rives solely from the delicts, if any, of its servant Thomas.

3. See cases collected at West's South Carolina Digest Master & Servant ⊜313.

they are master and servant. And, as was pointed out in *Seaboard,* although a master and servant are jointly liable, they are not joint tort-feasors in the strict sense, for the master's liability is only derivative from the delicts of his servant. Thus the *Bartholomew* decision does not prevent the application of *Seaboard* to this case.

This court is convinced that, were the Supreme Court of South Carolina faced squarely with this issue, it would adopt the rule that a release of the servant also releases the master.

This action was brought under the Federal Tort Claims Act, which provides for personal injury or property damage suits against the United States "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred."[4] In 1961, Congress amended the procedure for bringing a federal tort claim by the enactment of what is commonly referred to as the Federal Drivers Act, 28 U.S.C. 2679(b) which provides:

> The remedy by suit against the United States as provided by section 1346(b) of this title for damage to property or for personal injury, including death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.

A recent decision from the Tenth Circuit considers the precise situation we have here—whether release of the servant releases the master in a Tort Claims case brought after the enactment of the Federal Drivers Act. In Scoggin v. United States, 444 F.2d 74 (10th Cir. 1971), plaintiff's injuries resulted from an automobile accident allegedly caused by the negligence of a postmaster acting in the scope of his employment. The postmaster's private insurer paid the plaintiff $45,000 in exchange for a covenant not to sue. The covenant specifically reserved any rights the plaintiff might have against the United States. The trial court, applying Oklahoma law, found that the release of an employee through a covenant served to release the employer, when the employer's liability was premised solely on *respondeat superior.* The Tenth Circuit, affirming the trial court's entry of summary judgment for the United States, rejected the plaintiff's "novel reasoning" that the postmaster was released from liability by operation of law because of the Federal Drivers Act, so that the covenant not to sue was given against a nonexistent liability and was without legal significance to the case.

Plaintiff here counters the *Scoggin* rationale with Munson v. United States, 380 F.2d 976 (6th Cir. 1967), another case closely resembling the instant action on the facts. There the plaintiffs brought suit against an allegedly negligent Secret Service agent individually in the Ohio state court and against the United States in the district court. Subsequently plaintiff received $10,000, the full policy limits, from the Secret Serviceman's personal liability insurer, in exchange for a covenant not to sue. That covenant, like the one in the case at bar, recited that the payment was not intended as full compensation for plaintiffs, and it specifically reserved the plaintiffs' rights against the government.[5]

---

4. 28 U.S.C. § 1346(b).

5. Before discussing the issue at hand, the court noted that its decision would be "of limited future practical effect:"

> "This is so because the 1961 Amendments to the Federal Tort Claims Act now require a claimant to proceed directly against United States as his exclusive remedy. 28 U.S.C. § 2679(b).

The Sixth Circuit began its analysis —as I do here—with a consideration of the controlling state law. Though Ohio had adopted the "modern view" that the intent of the parties governs the interpretation of releases with express reservations of rights against third parties, nevertheless, "in the case of so-called primary and secondary tortfeasors, however, the older rule of automatic release is still enforced. Thus, a release of the negligent servant necessarily releases his master." 380 F.2d at 978. After a consideration of several Ohio cases construing this rule, the appellate court concluded that "the sole reason for the Ohio rule on master-servant releases was the protection of the master's right to indemnity." 380 F.2d at 979.

But it is this court's interpretation of South Carolina law that indemnification is not the only reason for the rule; the more compelling reason is that since the liability is merely derivative and secondary, then "the acquittal of the employee of wrongdoing conclusively negatives liability of the employer." Seaboard Air Line Railroad Co. v. Coastal Distributing Co., *supra*.

*Munson* suggests that the cases are not in agreement in interpreting the Tort Claims Act in situations akin to this one. United States v. First Security Bank of Utah, 208 F.2d 424 (10th Cir. 1953) is cited for enforcing the reservation made in the settlement and allowing suit against the government; Land v. United States, 231 F.Supp. 883 (N.D.Okla.1964), aff'd. 342 F.2d 785 (10th Cir. 1965) and Bacon v. United States, 321 F.2d 880 (8th Cir. 1963) hold that a release given to the employee necessarily releases the government. *Munson* then preceded to distinguish the latter two decisions, for reasons which this court does not find·persuasive. Suffice it to say that, after *Munson* attempted to distinguish *Land,* the Tenth

Circuit subsequently followed *Land* in *Scoggin.*

Thus, based on my interpretation of the South Carolina law that a release of the servant necessarily releases the master in such a factual context as is presented here, the defendant United States' Motion to Dismiss the Complaint should be granted.

And it is so ordered.

---

Thus in future cases under the Act it seems unlikely that releases and/or covenants given by an employee will play a part in settlements or litigation." 380 F.2d at 978.

That prediction underscores the anomalous nature of this case—the employee's private insurer voluntarily settled, though there was no possible way for its insured to be held personally liable.