**John R. MICKOWSKI, Plaintiff,**

v.

**VISI–TRAK WORLDWIDE, LLC, Defendant.**

**No. 1:02 CV 206.**

United States District Court, N.D. Ohio, Eastern Division.

June 7, 2004.

---

Mark A Phillips, Jeffrey A. Crossman, Benesch, Friedlander, Coplan & Aronoff, Stephen V. Cheatham, Cleveland, OH, for Plaintiff.

Alan N. Hirth, Meyers, Roman, Friedberg & Lewis, Jonathon M. Yarger, Chernett, Wasserman, Yarger & Pasternak, Scott D. Simpkins, John R. Climaco, Climaco, Lefkowitz, Peca, Wilcox & Garofoli, Mark E. Staib, Michael P. Shuster, Hahn, Loeser & Parks, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

### I.

In this case the plaintiff, John R. Mickowski, presses a claim of successor liability against the defendant, Visi–Trak Worldwide, LLC (VTW). Mickowski bases his

claim on a federal court judgment obtained against VTW's alleged predecessor, Visi–Trak Corporation (VTC). After that judgment, VTC initiated bankruptcy proceedings. VTW purchased substantially all of VTC's assets in a public sale approved by the bankruptcy court. The parties have consented to the jurisdiction of the Magistrate Judge.[1]

The parties have completed discovery and each has filed a motion for summary judgment.[2]

The motions for summary judgment present the following issues for decision:

- The liability imposed through a successor liability claim is that of the predecessor corporation. Here the order confirming VTC's reorganization plan discharged the liability underpinning Mickowski's claim, the patent judgment. That discharge remained in effect at the time VTW purchased VTC's assets. Did a successor liability claim arise when the bankruptcy court vacated the confirmation order after the asset purchase?

- Federal common law, rather than state law, supplies the rule of decision when a significant conflict exists between a specific, concrete federal policy or interest and state law, and the application of state law would compromise that policy or interest. Here Mickowski seeks to enforce liability on a federal patent infringement judgment through a successor liability claim. Does the requisite conflict exist to justify applying federal common law to that claim?

- Under Ohio's mere continuation exception to the rule on successor liability, the same people must own both the predecessor and the successor corporation for liability to attach. Here the

controlling shareholder of the predecessor, VTC, does not have a controlling interest in the successor, VTW, although his wife does. Can the interest of the wife in VTW be attributed to her husband to establish common ownership of the corporations?

- Mickowski seeks to prove fraud by VTW supporting successor liability for VTC's debt on the patent infringement judgment based on acts of officers, directors, employees, or owners of the company whose liability for those acts Mickowski released by a settlement agreement. Does the release of the individuals who allegedly committed the fraudulent acts discharge any vicarious liability that VTW may have based on those acts?

- Mickowski seeks to prove fraud by VTW supporting successor liability for VTC's debt on the patent infringement judgment based on VTW's purchase of VTC's assets at a public sale approved by the bankruptcy court. Mickowski did not object to the sale, appeal the order confirming the sale, or seek to vacate that order. May Mickowski challenge the sale as fraudulent in this separate successor liability action?

The Court concludes that at the time VTW purchased the assets of VTC through the order of the bankruptcy court, no claim for successor liability existed because the bankruptcy court had discharged VTC's liability on the patent infringement judgment by its order confirming the second amended plan of reorganization. Although the bankruptcy court subsequently vacated its order confirming that plan of reorganization, as a matter of public policy, successor liability should not attach retroactively under these circumstances. In the alternative, the Court concludes that state law applies to Mickowski's suc-

---

1. ECF # 32.

2. ECF # s 78, 81.

cessor liability claim and under either the mere continuation or fraud theories of such liability as provided for by Ohio law, Mickowski's claim fails as a matter of law. The Court, therefore, must deny Mickowski's motion for summary judgment and grant VTW's motion.

## II.

This memorandum opinion and order represents the Court's third foray into the tangled web woven by the machinations of Mickowski and VTW and its privies. The background facts relevant to this decision are amply set forth in the Court's two previous memoranda opinions [3] and the detailed stipulation of facts entered into by the parties.[4] The Court incorporates those memoranda opinions and the stipulation, with the exhibits attached thereto, by reference.

## III.

As an initial matter, the Court must decide what effect, if any, the bankruptcy court's order confirming VTC's plan of reorganization has upon Mickowski's successor liability claim.

On January 25, 2001, the bankruptcy court issued findings of fact, conclusions of law, and an order confirming a second amended plan of reorganization for VTC submitted by Mickowski and VT Acquisition Corp.[5] That order discharged all of VTC's debts that arose before the order's date except as otherwise provided in the plan.[6] The Court has reviewed the plan of reorganization approved by the January 25, 2001 order.[7] The plan did not exempt the patent infringement judgment from the discharge.

VTW purchased substantially all of VTC's assets in a public sale approved by the bankruptcy court on May 18, 2001.[8] On August 2, 2001, the bankruptcy court vacated the order confirming the plan of reorganization.[9]

■■■ The liability that Mickowski seeks to impose on VTW by the successor liability claim is that of a predecessor, VTC, on the patent infringement judgment.[10] It stands to reason, therefore, that VTC's liability on that judgment is a precondition to Mickowski's recovery on the successor liability claim. Confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code discharges preconfirmation debt of the debtor.[11] The patent infringement judgment was preconfirmation and was, therefore, discharged by the order confirming VTC's plan of reorganization, which Mickowski proposed.

■■■ At the time VTW purchased VTC's assets in May of 2001, VTC had no liability on the patent infringement judgment. No viable claim of successor liability existed at that time. The bankruptcy court vacated the confirmation order several months after VTW purchased VTC's assets. The Court will assume that the order vacating the confirmation revived VTC's liability on the patent infringement judgment. But, did a cause of action for successor liability arise at that time?

---

3. ECF # 37, at 3–4; ECF # 73, at 6–9, reported at *Mickowski v. Visi–Trak Worldwide, LLC,* 298 F.Supp.2d 692, 696 (N.D.Ohio 2003).

4. ECF # 64.

5. ECF # 84, at 181–89.

6. *Id.* at 188.

7. *Id.* at 23–101.

8. ECF # 64, at 4.

9. ECF # 93, Ex. 1.

10. *In re White Motor Credit Corp.,* 75 B.R. 944, 950 (Bankr.N.D.Ohio 1987).

11. *In re Troutman Enters., Inc.,* 253 B.R. 8, 11 (6th Cir.B.A.P.2000).

The Court has found no authority dictating the outcome on this unique set of facts, and the parties have cited to no such authority. The Court must conclude, however, that as a matter of public policy a claim of successor liability did not arise at the time the bankruptcy court vacated the confirmation order.

In an earlier decision, this Court considered whether the bankruptcy court order approving the public sale of assets to VTW insulated the buyer from a successor liability claim.[12] The Court concluded that it did not because the order made the sale of the assets free and clear of secured claims only.[13] What the parties did not argue at the time, but what is now apparent, is that VTC had no unsecured liability on the patent infringement judgment because the earlier confirmation order had discharged that liability.

In agreeing to purchase the assets of VTC under the bankruptcy court's order, VTW had the right to reasonably rely upon the effect of the confirmation order and to conclude that it had no risk of successor liability because that order had discharged the predecessor liability necessary for such a claim. To impose successor liability upon VTW after the fact, when the bankruptcy court later vacated the confirmation order, would frustrate the purpose of providing for a final resolution of claims through the bankruptcy process. The Court in *In re White Motor* specifically addressed this purpose and the adverse effect upon the accomplishment of that purpose brought by a successor liability claim:

> The liability which state law imposes through successor liability is that of the manufacturer. The federal purpose of final resolution and discharge of corporate debt is clearly compromised by imposing successor liability on purchasers of assets when the underlying liability has been discharged under a plan of reorganization.[14]

Public policy requires the protection of VTW's reasonable expectations in undertaking the public purchase of VTC's assets, under the auspices of the bankruptcy court, based upon the then-outstanding confirmation order and the discharge of pre-confirmation debt provided for therein.

Because of the unique circumstances presented by this case and the lack of precedent addressed to those circumstances, the Court will proceed to the other arguments made by the parties on summary judgment.

### IV.

#### A.

Mickowski places primary reliance on the argument that VTW has successor liability for VTC's debt on the patent infringement judgment because it is a mere continuation of VTC. This confronts the Court with the threshold question of whether state or federal law applies to the issue of VTW's successor liability. Mickowski argues that the federal common law doctrine of expanded mere continuation should apply. VTW responds that the Court must apply Ohio law, which provides for a narrower, traditional mere continuation rule.

Some federal courts have developed a federal common law rule of expanded mere continuation as a basis for successor liability in the employment law context. As set forth by the Seventh Circuit in *E.E.O.C. v. G–K–G, Inc.,*[15] successor liability attaches

---

12. ECF # 37.

13. *Id.* at 8–10.

14. *In re White Motor,* 75 B.R. at 950.

15. *E.E.O.C. v. G–K–G, Inc.,* 39 F.3d 740 (7th Cir.1994).

if the purchasing company has both notice of the liability and substantially continues the previous company's course of business.[16]

 The Supreme Court of Ohio, in *Welco Industries, Inc. v. Applied Companies,*[17] reaffirmed Ohio's general rule of successor liability, holding that "the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation."[18] The court recognized four exceptions to that rule, one being where the buyer corporation is a mere continuation of the seller corporation.[19] For liability under the mere continuation exception, the predecessor company and the successor company must have common ownership.[20] The federal common law rule does not impose that requirement.

Mickowski argues that the application of expanded mere continuation in the ERISA and Title VII contexts dictates its application here. Further, Mickowski argues that under the United States Supreme Court's own standards for supplanting state law with federal common law, a demonstrable need exists for uniformity of enforcing patent rights that directly conflict with the state's interest in facilitating asset purchases between corporations free of successor liability.[21]

The Supreme Court has spoken directly to extending the application of federal common law in a novel context in *Atherton v. Federal Deposit Insurance Corporation.*[22] In *Atherton,* the plaintiff, Resolution Trust Corporation, sued several officers and directors of a federally insured savings bank. The Supreme Court decided the sole issue of whether state law, federal common law, or federal statute governed the standard of care that should be applied to the behavior of the officers and directors of the bank.[23]

The Court cautioned against applying federal common law, noting that "cases in which judicial creation of a special federal rule would be justified are few and restricted."[24] Congress, not the federal courts, should decide whether the federal common law should displace state law.[25] Finally, the Court cautioned that the existence of related federal statutes does not show that Congress intended the courts to create federal common law, since "Congress acts against the background of the total corpus juris of the states."[26] Therefore, the Court held that when the federal courts decide "to fashion rules of federal common law, the guiding principle is that a significant conflict between some federal policy or interest and the use of state law must specifically be shown."[27] That conflict must be a precondition to applying federal common law.[28]

The Court in *Atherton* specifically rejected uniformity as a sufficient reason for

16. *Id.* at 748.

17. *Welco Indus., Inc. v. Applied Cos.,* 67 Ohio St.3d 344, 617 N.E.2d 1129 (1993).

18. *Id.* at 346, 617 N.E.2d at 1132.

19. *Id.* at 349, 617 N.E.2d at 1133.

20. *Id.* at 350, 617 N.E.2d at 1134.

21. ECF # 90, at 5, 6.

22. *Atherton v. F.D.I.C.,* 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997).

23. *Id.* at 215–16, 117 S.Ct. 666.

24. *Id.* at 218, 117 S.Ct. 666.

25. *Id.*

26. *Id.*

27. *Id.*

28. *Id.* citing, inter alia, *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 98, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

applying federal common law.[29] The Court found that banks have thrived despite widely varying standards of corporate governance amongst the states.[30] The Court also rejected the F.D.I.C.'s arguments urging application of federal common law based on the bank's federal charter, noting that pointing to the bank's federal genesis "shows no conflict, threat, or need for 'federal common law.'"[31]

Moreover, the Court noted that despite a federal statute that could decide the question, because the state standard of care was more restrictive, the state law should apply. The court reasoned that "the statute's gross negligence standard provides only a floor—a guarantee that officers and directors must meet at least a gross negligence standard. It does not stand in the way of a stricter standard that the laws of some States provide."[32] The court ultimately ruled that despite the conflicting negligence standards, the federal genesis of the bank, and the existence of a federal statute addressing the negligence standard, New Jersey state law should apply because the Court could not find any "significant conflict with, or threat to, a federal interest."[33]

Some federal courts have applied the *Atherton* guidelines for extending the federal common law of successor liability in the context of employment, environmental, and patent law. In each context the respective court recognized *Atherton's* requirement that a conflict between federal common law and the applicable state law at issue must be shown. Further, each case discusses the policy considerations involved in displacing state law absent an express authorization by Congress.

The Seventh Circuit in *Moriarty v. Svec* applied the federal common law doctrine of expanded mere continuation in lieu of Illinois state law of successor liability to find a successor liable under the Employee Retirement Income Security Act.[34] The plaintiff, Moriarty, trustee of a fund receiving contributions from defendant Svec's funeral home, sued Svec for contributions not made when the home was owned by Svec's father. Svec purchased the funeral home's assets from his mother upon his father's death.

The court decided the issue of whether Svec could be found liable as a successor to his father's business. In deciding whether to apply the state standard of successor liability—which would preclude Moriarty's suit—or the more relaxed federal common law standard permitting successor liability, the Seventh Circuit applied the policy considerations outlined in *Atherton*. The court evaluated, under *Atherton*, the federal interest of protecting employees from losing their retirement contributions versus the state's interest in facilitating the efficient transfer of corporate assets.[35]

The court reasoned that *Atherton* permitted supplanting state law with federal common law where Congress intends to avoid conflict between the federal scheme and state law.[36] Noting that the Supreme Court recognized the validity of implementing federal common law in the ERISA context, the *Moriarty* court emphasized that state law of successor liabili-

**29.** *Id.* at 219–20, 117 S.Ct. 666 citing *Kamen,* 500 U.S. at 103, 111 S.Ct. 1711.

**30.** *Id.* at 220–21, 117 S.Ct. 666.

**31.** *Id.* at 223, 117 S.Ct. 666.

**32.** *Id.* at 227, 117 S.Ct. 666.

**33.** *Id.* at 225, 117 S.Ct. 666.

**34.** *Moriarty v. Svec,* 164 F.3d 323 (7th Cir. 1998).

**35.** *Id.* at 327–28.

**36.** *Id.* at 328.

ty would significantly diminish the effect of ERISA by allowing successors such as Svec to escape their obligations to pay benefits to employees of the predecessor business entity.[37]

The *Moriarty* court concluded that the individual rights of the employees, insofar as they were protected by the ERISA scheme, outweighed the state's interest in facilitating the free transfer of corporate assets.[38] Therefore, the federal common law of successor liability applied.[39]

In *Atchison, Topeka and Santa Fe Railway Company v. Brown & Bryant, Inc.,* the Ninth Circuit took up the issue of whether state or federal common law applies to successor liability under CERCLA.[40] In *Atchison,* the railroad was found liable for cleanup of waste under CERCLA on lands it leased to an agricultural chemical company, Brown & Bryant.[41] Brown & Bryant, when faced with the impossibility of paying for cleanup costs, sold its assets to PureGro.[42] Atchison then sought recovery for the cleanup from PureGro as a successor of Brown & Bryant.[43]

Under prior Ninth Circuit precedent, federal common law applied to the successor liability question.[44] However, the federal common law as interpreted by the Ninth Circuit was identical to the California state law of successor liability.[45] Both the federal common law and state law provided for successor liability based upon the traditional theory of mere continuation.[46]

Atchison conceded that PureGro had no successor liability under the traditional mere continuation theory.[47] It argued for the addition of an expanded theory of mere continuation under the federal common law.[48] PureGro responded by arguing that in light of *Atherton,* the state common law rules of successor liability should apply, thereby precluding any argument by Atchison to expand the mere continuation exception.[49]

The Ninth Circuit discussed in detail the standards established by *Atherton* and a predecessor case, *O'Melveny & Myers v. Federal Deposit Insurance Corporation.*[50] It found considerable merit to the arguments that under *Atherton's* standards, no compromise of a specific, concrete federal policy or interest existed to support the development of a federal rule of decision applicable to successor liability claims in the CERCLA context.[51] In doing so, the court cited with approval Judge Kennedy's concurring opinion in *Anspec Company,*

37. *Id.* at 329.

38. *Id.*

39. *Id.*

40. *Atchison, Topeka & Santa Fe Ry. Co., et. al. v. Brown & Bryant, Inc.,* 159 F.3d 358 (9th Cir.1997), amending and replacing *Atchison, Topeka & Santa Fe Ry. Co., et. al. v. Brown & Bryant, Inc.,* 132 F.3d 1295 (9th Cir.1997), which overruled the circuit's holding that federal common law applied to successor liability and instead applied California state law of successor liability.

41. *Id.* at 360.

42. *Id.*

43. *Id.*

44. *Id.* at 361.

45. *Id.* at 362.

46. *Id.*

47. *Id.* at 361.

48. *Id.* at 362.

49. *Id.*

50. *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

51. *Id.* at 363–64.

*Inc. v. Johnson Controls, Inc.,*[52] in which she extensively set out her reasons for applying state successor liability law in the CERCLA context.[53]

The court decided that it need not choose between the federal common law and state law.[54] It found no reason to adopt an expanded mere continuation exception to successor liability under the common law.[55] Accordingly, at least in the Ninth Circuit, no difference existed between the requirements for successor liability under federal common law and those under state law.[56] In the court's words "... traditional rules are adequate to protect CERCLA's goal of obtaining clean up costs from responsible parties." [57]

Precedent does exist for rejecting the application of federal common law of successor liability in the context of patent litigation. The Northern District of Illinois decided whether state or federal common law of successor liability applied in a patent infringement suit in *Arachnid, Inc. v. Valley Recreation Products, Inc.*[58] Arachnid filed a one count complaint for patent infringement against Valley Recreation Products, Inc., later amending the suit to include Valley Recreation's successor, Valley–Dynamo Limited Partnership.[59]

Arachnid argued for applying the federal common law of successor liability based on a need for uniformity and the constitutional origin of patent rights.[60] The district court applied *Atherton* and found that federal patent statutes do not set forth standards for successor liability, and the need for uniformity was not pressing—"corporations and other business organizations routinely deal with disparities in corporate governance." [61] The court concluded that there is no significant conflict between the federal interest enforcing patent rights and the application of state law standards of successor liability.[62] It held, therefore, that Illinois state law applied to Arachnid's patent infringement suit to determine whether Valley–Dynamo was liable as a successor to Valley Recreation.[63]

After giving careful consideration to *Atherton* and its progeny, this Court must conclude that the district court in *Arachnid* properly rejected federal common law as the rule of decision for successor liability claims asserted in the patent context. Federal patent statutes provide a comprehensive scheme for deciding issues of patent validity and infringement. Once a court has decided those issues under federal law, "no specific, concrete federal policy or interest is compromised" [64] by the application of state successor liability law. Precedents from the Sixth Circuit,[65] the Federal Circuit,[66] and the Ohio courts [67] recognize that the enforcement of the rights that accrue from a valid patent,

**52.** *Anspec Co., Inc. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1248–51 (6th Cir.1991).

**53.** *Atchison,* 159 F.3d at 363, 364.

**54.** *Id.* at 364.

**55.** *Id.*

**56.** *Id.*

**57.** *Id.*

**58.** *Arachnid, Inc. v. Valley Recreation Prods., Inc.,* No. 98 C 50282, 2001 WL 1664052 (N.D.Ill.Dec.27, 2001).

**59.** *Id.* at *1.

**60.** *Id.* at *12.

**61.** *Id.* at *12, citing *Atherton,* 519 U.S. at 220, 117 S.Ct. 666.

**62.** *Id.* at *12.

**63.** *Id.* at *12–*13.

**64.** *O'Melveny & Myers,* 512 U.S. at 87, 114 S.Ct. 2048.

**65.** E.g., *Permanence Corp. v. Kennametal, Inc.,* 908 F.2d 98, 100 (6th Cir.1990).

**66.** E.g., *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 920 (Fed.Cir.1995).

**67.** E.g., *Ott–A–Matic, Inc. v. Micafil, Inc.,* No. CA–10612, 1987 WL 33783, at *2 (Ohio Ct. App. Dec.31, 1987).

such as through patent licensing agreements, is governed by state law. As the Ninth Circuit recognized in *Atchison*,[68] and as Judge Kennedy of this Circuit observed in *Anspec*,[69] state law across the country on successor liability is largely uniform. State law provides adequate protection for the rights pertinent to a valid patent.

### B.

■ Mickowski does make the argument that he is entitled to judgment as a matter of law under the traditional mere continuation exception to Ohio's successor liability rule.[70] This argument lacks merit, however.

For traditional mere continuation, the "same people" must own both corporations.[71] Although Ohio case law has not fully fleshed out this concept, the Court will assume that the same people own both corporations if those owning a controlling interest in the predecessor corporation have a controlling interest in the successor corporation.

Viewing the facts in the light most favorable to Mickowski, John Vann, the controlling shareholder of VTC,[72] controls at most five percent of VTW,[73] and Kathleen Vann, who had no ownership interest in VTC,[74] controls ninety-five percent of VTW.[75]

■ John Vann and Kathleen Vann are husband and wife. Under Ohio law, however, Kathleen's ownership interest cannot be imputed to John. The Ohio Court of Appeals for the Eighth Appellate District took up this issue in the context of a successor liability claim in *Semirale v. Rhea*.[76] It concluded that a husband and wife are not "essentially the same people" under Ohio law.[77] A wife's interest in a successor corporation cannot, therefore, be imputed to her husband for purposes of establishing mere continuation of a business under the traditional theory of successor liability provided for in the *Welco* decision.[78]

### V.

### A.

In the alternative, Mickowski argues that, under state law, successor liability exists because of fraud perpetrated by the owners, officers, and employees of VTW. The Supreme Court of Ohio in *Welco Industries, Inc. v. Applied Companies*[79] held that successor liability may arise out of the purchase of assets of a predecessor corporation if the buyer fraudulently entered into the transaction for purposes of escaping liability.[80]

Mickowski premises his argument for fraud-based successor liability on three distinct acts:

- The formation of VTW,
- The abandonment of VTC by its officers and directors, and

---

68. *Atchison*, 159 F.3d 358.

69. *Anspec*, 922 F.2d 1240.

70. ECF # 90, at 6–7.

71. *Welco*, 67 Ohio St.3d at 350, 617 N.E.2d at 1134.

72. ECF # 84, at 153–56.

73. ECF # 87, Ex. B, Deposition of John Vann, at 44–46.

74. ECF # 84, at 153–56.

75. ECF # 87, Ex. B., Deposition of John Vann, at 44–45.

76. *Semirale v. Rhea*, No. 65906, 1994 WL 197219 (Ohio App. May 19, 1994).

77. *Id.* at *3.

78. *Id.*

79. *Welco*, 67 Ohio St.3d 344, 617 N.E.2d 1129.

80. *Id.* at 347, 617 N.E.2d at 1132.

• VTW's purchase of substantially all of VTC's assets.[81]

In an earlier memorandum opinion in this case, the Court took up the interpretation and effect of a settlement and release agreement entered into by Mickowski with four former officers of VTC and with Kathleen Vann, the wife of VTC's controlling shareholder.[82] That memorandum opinion expressly reserved the issue of the effect of the release on Mickowski's fraud-based claim.[83] The Court must now confront that issue.

As the Court observed in its earlier decision, the settlement agreement released only claims arising out of acts or omissions occurring up to and including the date of the agreement—March 26, 2001.[84] According to Mickowski's interpretation of that agreement, the release discharged the liability of the named releasees—John Vann, Ying Shen, John Brandon, Thomas Vann, and Kathleen Vann—and the vicarious liability of "affiliates" of the named releasees arising out of their acts and omissions.[85] Although VTW disputes that interpretation,[86] the Court will accept it for purposes of the following analysis.

 The Court must conclude that the settlement agreement bars Mickowski's fraud-based successor liability claim to the extent that he bases that claim on the formation of VTW or on the so-called abandonment of VTC by its officers and directors.

As an initial matter, the formation of VTW and the so-called abandonment took place before the date of the settlement agreement. VTW was formed on or about September 21, 2000.[87] John Vann, Thomas Vann, Ying Shen, and John Brandon resigned from their positions with VTC on or about November 13, 2000.[88] These acts fell within the time frame covered by the release.

Furthermore, individuals expressly named as releasees in the agreement perpetrated the acts complained of. Kathleen Vann and John Vann own or control all of the shares of VTW.[89] The officers and directors whose resignation constituted the alleged abandonment are named releasees—John Vann, Thomas Vann, Ying Shen, and John Brandon.[90]

The formation of VTW and the resignation of the officers and directors made up the gravamen of an adversary proceeding brought in the bankruptcy court by Mickowski against the releasees.[91] The settlement agreement provided for the dismissal of that adversary proceeding with prejudice.[92] No doubt exists, therefore, that the settlement agreement released the named releasees from any and all liability arising out of the first two factual components of Mickowski's fraud-based successor liability claim.

VTW can only acquire liability for the fraud alleged by virtue of the acts of its officers, directors, employees, or agents.[93]

81. ECF # 1, ¶ 22.

82. *Mickowski*, 298 F.Supp.2d 692.

83. *Id.* at 698.

84. *Id.* at 696.

85. *Id.* at 697.

86. *Id.* at 696–97.

87. ECF # 64, ¶ 1.

88. ECF # 64, ¶ 11.

89. ECF # 48.

90. ECF # 1, ¶¶ 9, 21, and 22.

91. ECF # 64, Ex. 3.

92. ECF # 64, Ex. 6, ¶ 7.

93. Cf., *Arcanum Nat'l Bank v. Hessler*, 69 Ohio St.2d 549, 557, 433 N.E.2d 204, 211 (1982).

Liability would only arise vicariously from the acts or omissions of the various named releasees who formed VTW or participated in the alleged abandonment.

Under precedents from the Sixth Circuit and the Ohio court of appeals, release of the named releasees extinguished any vicarious liability of VTW. In *Munson v. United States*,[94] the Sixth Circuit took up the issue of whether, under Ohio law, the release of an employee-tortfeasor releases the vicarious liability of the employer. The case arose out of an auto accident involving the plaintiff, Munson, and Beard, an employee of the Secret Service. Munson sued Beard in state court and the United States in federal court under the Federal Tort Claims Act. Munson settled the claim in state court against Beard on a covenant not to sue, reserving his rights to proceed in federal court against the United States.

The Sixth Circuit found that under Ohio law, the release of a primary tortfeasor releases the secondary tortfeasor whose liability is premised upon respondeat superior.[95] The court observed that a contrary rule would deprive the secondary tortfeasor of the right to reimbursement or indemnity from the primary tortfeasor.[96]

Under the Federal Tort Claims Act, the United States had no right to indemnity against an employee. The court concluded, therefore, that if the secondary tortfeasor had no entitlement to indemnification from the primary tortfeasor, the Ohio courts would not apply the "automatic re-lease" rule.[97] It permitted Beard to proceed against the United States.

■ Where the secondary tortfeasor has a right to indemnification against the primary tortfeasor, however, the automatic release rule does apply. The Ohio Court of Appeals for the Eighth Appellate District so held in *Wells v. Spirit Fabricating, Ltd.*[98] In that case, Wells sustained injuries in an auto accident with Puleo, Spirit Fabricating's employee. Wells sued both the employee and the employer and subsequently settled with Puleo and released him. Spirit Fabricating argued that the release of Puleo released his employer.

Relying on the Sixth Circuit's reasoning in *Munson*, the court held that in Ohio the release of the primary tortfeasor releases the secondary tortfeasor, where the theory against the secondary tortfeasor is vicarious liability and the release extinguishes the secondary tortfeasor's right to indemnity from the primary tortfeasor.[99]

■ Where the secondary tortfeasor pays the plaintiff's claim, it becomes subrogated to the rights of the plaintiff against the primary tortfeasor.[100] But, where the plaintiff has already released all rights against the primary tortfeasor, no right of reimbursement exists.[101] The court observed that applying a different rule would permit fraudulent settlements where the plaintiff settles with the primary tortfeasor for a nominal sum, reserving the right to pursue the secondary tortfeasor, who will have no right to reimbursement.[102]

---

94. *Munson v. United States*, 13 Ohio Misc. 243, 380 F.2d 976 (6th Cir.1967).

95. *Id.* at 978.

96. *Id.* at 978–79.

97. *Id.* at 979.

98. *Wells v. Spirit Fabricating, Ltd.*, 113 Ohio App.3d 282, 680 N.E.2d 1046 (1996).

99. *Id.* at 291–93, 680 N.E.2d at 1051–53.

100. *Id.* at 293, 680 N.E.2d at 1053.

101. *Id.*

102. *Id.*

Mickowski's fraud-based successor liability claim, to the extent that he premises that claim on VTW's formation in the abandonment of VTC by its officers and directors, seeks to tag VTW with vicarious liability for the acts of its privies. Mickowski has released those privies from their primary liability for those acts. That release extinguished VTW's vicarious liability.

### B.

■ The sale of VTC's assets to VTW took place after the effective date of the settlement agreement. As this Court has previously ruled, the settlement agreement did not release the successor liability claim to the extent that it is based on that sale.[103]

■ Assuming arguendo that Mickowski could prevail on his fraud claim based on the asset purchase alone, another procedural barrier exists to his recovery on that basis. Mickowski did not object to the public sale of the assets to VTW, did not appeal the order confirming that sale, and has not sought to have the bankruptcy court vacate that order. Mickowski's attempt to premise liability on VTW's purchase of the assets constitutes an impermissible collateral attack on the bankruptcy court's order confirming the sale.

The opinion of the Seventh Circuit in *In re Met–L–Wood Corp.*[104] is instructive. In *In re Met–L–Wood,* a trustee attacked a sale of assets approved by the bankruptcy court at an earlier date before the conversion of the case from a Chapter 11 reorganization to a Chapter 7 liquidation. The trustee brought a suit in district court under RICO and state law claiming that the sale defrauded unsecured creditors and seeking damages. The district court dismissed the fraud suit based on the collateral estoppel effect of the sale order, and the court of appeals affirmed.[105]

As an initial matter, the Seventh Circuit held that the order confirming the sale of assets under § 363 of the Bankruptcy Code was a final appealable order that could not be attacked by a separate suit.[106] Because the plaintiff challenging the sale by the fraud suit appeared at the hearing on the confirmation of the property sale, res judicata barred his challenge.[107] The court found that the fraud suit was an impermissible collateral attack on the bankruptcy court's judgment and that the district court had properly dismissed it.

> Gekas's [the trustee's] suit does not seek to rescind the sale. But by seeking heavy damages from the seller, the purchaser, the purchaser's purchaser (Pipin), a law firm involved in the transaction, and the secured creditors that benefited[sic] from the sale, the suit is a thinly disguised collateral attack on the judgment confirming the sale. This may be done only by the route provided for collateral attacks on judgments. After the time for appeal had run, the validity of the sale would establish, even against nonparties to the sale proceeding.

> Gekas's suit was properly dismissed....[108]

The reasoning of the court in *In re Met–L–Wood* applies with equal force here. Mickowski, like the trustee, seeks to challenge as fraudulent a purchase of assets approved by the bankruptcy court under

---

103. *Mickowski,* 298 F.Supp.2d at 697.

104. *In re Met–L–Wood Corp.,* 861 F.2d 1012 (7th Cir.1988).

105. *Id.* at 1015.

106. *Id.* at 1016.

107. *Id.* at 1016–17.

108. *Id.* at 1018.

§ 363 of the Bankruptcy Code. Mickowski participated in the hearing held by the bankruptcy court on the public sale and raised no objection. Mickowski took no appeal from the order confirming the sale and has not sought to vacate it, yet he seeks by a separate suit based on fraud "heavy damages" from the purchaser of the assets. This Court, as did the court in *In re Met–L–Wood,* must conclude that the claim is a "thinly disguised collateral attack on the judgment confirming the sale." As such, this Court must dismiss the claim.

## VI.

Based on the foregoing analysis, VTW's motion for summary judgment[109] is granted, and Mickowski's motion for summary judgment is denied.[110]

IT IS SO ORDERED.